17233

HARLEY ODOM, Respondent, v. FORD MOTOR COMPANY, Appellant

(95 S. E. (2d) 601)

*Melvin Hyman, Esq.,* of Darlington, *for Appellant,*

322

*Messrs. John P. Gardner* and *Robert L. Kilgo,* of Darlington, *for Respondent,*

*Melvin Hyman, Esq.,* of Darlington, *for Appellant,*

December 11, 1956.

OXNER, Justice.

This action was brought by Harley Odom, a Darlington County farmer, against the Ford Motor Company to recover damages for alleged breach of warranty of soundness and fitness of a tractor for agricultural purposes. The tractor was manufactured by Ford and sold to its Charlotte dis-

tributor, Carolina Ford Tractor, Inc., which in turn sold it to the Darlington dealer, Sansbury Tractor Co., Inc., from which it was purchased by Odom on August 1, 1953.

The complaint is based on an oral express warranty as to quality and adaptability claimed to have been made by Sansbury Tractor, Inc., as the agent of Ford, and also on an implied warranty by the manufacturer as to the fitness and adaptability of the tractor for agricultural purposes. It was alleged in the complaint that the tractor was "not capable of doing general farm work because of a defective lift." It was further alleged in Paragraph 5:

"That because of the defective lift on said tractor, and the resulting inefficiency for general farm use, plaintiff's valuable crops were materially damaged as he was unable to perform the tasks designed for the said tractor to do; that plaintiff was put to great additional expense in his farming operations by reason of the aforesaid defects which directly caused and occasioned loss and damage to plaintiff in the sum of Three Thousand ($3,000.00) Dollars."

The first defense of Ford was in effect a general denial. As a second defense, it set up an express written warranty wherein it limited its obligation to the replacement, for a period of ninety days from date of delivery, of any parts found defective. It was further stipulated: "This warranty is in lieu of any other warranty express or implied and any other obligation or liability on the part of Ford Motor Company." As a third defense, it was alleged that if said tractor had a defective lift, such could have been discovered by reasonable inspection or examination and that by accepting said tractor and keeping same for a period in excess of ninety days without making any complaint, the purchaser had waived any right to assert that it was defective.

At the commencement of the trial defendant moved to require the plaintiff to elect whether he would proceed upon an express warranty or an implied warranty. The Judge reserved his ruling and proceeded to take the testimony. That of plaintiff was to the effect that shortly after purchasing

the tractor it developed that the lift, described in the testimony as a hydraulic system which "raises, lowers and controls the implement", would not function properly; that such defect was called to the attention of the Darlington dealer and Charlotte distributor but was not remedied; that because of the inability of the plaintiff to use the tractor on his farm he was delayed in planting his 1954 cotton crop, causing a considerable loss in production and necessitating purchasing mules to do the work which should have been done by the tractor. According to the testimony of the defendant, no complaint was made to it as to any parts being defective for almost a year after the tractor was purchased and the alleged defective lift was corrected and new parts installed in March and June, 1955, without any expense to the plaintiff.

At the conclusion of the testimony it was conceded that there was no testimony showing that Sansbury Tractor Co., Inc., was the agent of Ford or that said dealer had any authority to bind Ford by any representation or warranty. Respondent then elected to proceed on an implied warranty by the manufacturer of the fitness and adaptability of the tractor for the purposes for which it was sold. During the course of the trial timely motions were made by the defendant for a nonsuit and a directed verdict. These motions were refused and the case submitted to the jury solely on the theory of an implied warranty. A verdict was returned for plaintiff in the sum of $3,000.00. Defendant made a motion for judgment *non obstante veredicto* or in the alternative for a new trial, which was refused. This appeal followed.

There are numerous exceptions but we need only consider the contention that this action may not be maintained against Ford on an implied warranty because of lack of privity of contract. We may disregard the written warranty set up in Ford's answer limiting its liability to the replacement during a certain stipulated period of any defective parts, since under the instructions of the Court the jury necessarily found that this warranty was not binding on respondent be-

cause it was never brought to his attention. *Stevenson v. B. B. Kirkland Seed Co.*, 176 S. C. 345, 180 S. E. 197; *Reliance Varnish Co. v. Mullins Lumber Co.*, 213 S. C. 84, 48 S. E. (2d) 653; *Joseph v. Sears, Roebuck & Co.*, 224 S. C. 105, 77 S. E. (2d) 583, 40 A. L. R. (2d) 742.

At the outset we are met with respondent's argument that the question of lack of privity between the parties cannot be considered because it was not included in the grounds of the motions for nonsuit and directed verdict. While privity of contract was not mentioned *eo nomine,* appellant's position throughout the trial was that the only liability assumed by it was under the written warranty set up in the answer and if there was any other warranty made at the time of the purchase of the tractor, it was the sole obligation of Sansbury Tractor Company which was not its agent and was without authority to bind it in any manner whatsoever. After careful consideration of the grounds of the motion for nonsuit and directed verdict, it is our conclusion that they are broad enough to raise the question of whether an action could be maintained against appellant on an implied warranty. It was not necessary for appellant to "brief" the point. It should be further stated that the element of privity of contract was specifically mentioned and argued on appellant's motion for judgment *non obstante veredicto* and it appears that respondent's counsel participated in the argument of this question without reservation or objection. Evidently they then thought that it was properly before the Court. In the order denying the motion, the Court held that lack of privity of contract between appellant and respondent would not bar the maintenance of an action on an implied warranty.

The general rule is that privity of contract is required in an action for breach of an implied warranty and that there is no such privity between a manufacturer and one who has purchased the manufactured article from a dealer or is otherwise a remote vendee. *Collum v. Pope & Talbot, Inc.*, 135 C. A. (2d) 653, 288 P. (2d) 75; *Lom-*

*bardi v. California Packing Sales Co., R. I.,* 112 A. (2d) 701; *Silverman v. Samuel Mallinger Co.,* 375 Pa. 422, 100 A. (2d) 715; *Wood v. General Electric Co.,* 159 Ohio St. 273, 112 N. E. (2d) 8; *Cohan v. Associated Fur Farms, Inc.,* 261 Wis. 584, 53 N. W. (2d) 788; *Cotton v. John Deere Plow Co.,* 246 Ala. 36, 18 So. (2d) 727; *Dennis v. Willys-Overland Motors, Inc.,* D. C., 111 F. Supp. 875; *Torpey v. Red Owl Stores,* 8 Cir., 228 F. (2d) 117, 121. In the last mentioned case the Court said: "While the warranty is implied by law it nevertheless becomes a part of the contract."

The foregoing rule is followed in this jurisdiction. In *Mauldin v. Milford,* 127 S. C. 508, 121 S. E. 547, 551, the Court held that the warranty of a chattel does not run with the property but is personal to the purchaser to whom the warranty is made, and that a subsequent sale by such purchaser " 'does not operate to vest in a subsequent purchaser any right of action which the former might have against the original seller for a breach of the warranty.' " The Court stated that this rule is "obviously predicated upon the theory that there is no such privity, either of contract or estate, between the remote sub-purchaser and the original seller as will support such a right of action."

Among the exceptions developed by many courts to the foregoing rule is that a manufacturer or seller is liable to a third person in the preparation or sale of an article or product "inherently" dangerous to human safety, such as firearms, explosives, etc. Another exception excluded foodstuffs and beverages, it being held that an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract.

In the celebrated case of *MacPherson v. Buick Motor Co.,* 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, the Court of Appeals in an opinion by Judge Cardozo, held the manufacturer of an automobile liable to a remote vendee for injury caused by failure properly to inspect a wheel, bought from another maker, which had in it a hidden but discover-

able defect that caused it to collapse. The philosophy underlying this decision was that the manufacturer assumed a responsibility to the ultimate purchaser which rested not upon contract but upon the foreseeability of harm if proper care were not used. The current trend is to enlarge the liability of the manufacturer to a remote vendee to include any article or product which if negligently made or prepared may reasonably be anticipated to cause injury to those properly using it. The extension of the principle is fully discussed in *Carter v. Yardley & Co.,* 319 Mass. 92, 64 N. E. (2d) 693, 164 A. L. R. 559, and in the annotation following that case. Recognition of it will be found in Restatement of the Law of Torts, Volume 2, Section 395.

It will be noted that liability under the theory discussed in the preceding paragraph is not based on the breach of an implied warranty but upon the view that the failure of the manufacturer to exercise reasonable care in the making of an article which if negligently made is likely to cause injury to the person using it sounds in tort, and that recovery must rest upon negligence. In *Carter v. Yardley & Co., Ltd., supra,* 319 Mass. 92, 64 N. E. (2d) 693, 696, 164 A. L. R. 559, a manufacturer of perfume was held liable for negligence to a remote vendee. It was there stated that the manufacturer's duty "is not created by contract, but is an instance of the general human duty not to injure another through disregard of his safety." In the course of the opinion the Court observed that "in an action of contract, such as an action upon an express or implied warranty, want of privity of contract would be a defense." In *Wood v. General Electric Co., supra,* 159 Ohio St. 273, 112 N. E. (2d) 8, 11, the Court said: "Although a subpurchaser of an inherently dangerous article may recover from its manufacturer for negligence, in the making and furnishing of the article, causing harm to the subpurchaser or his property from a latent defect therein, no action may be maintained against such manufacturer by such subpurchaser for such harm, based upon implied warranty of fitness of the article so purchased."

The cases in this State holding a manufacturer liable to a remote vendee have generally been in tort. In *Mauldin v. Milford, supra,* 127 S. C. 508, 121 S. E. 547, the Court stated that the liability of a "manufacturer of food products, articles inherently noxious or dangerous, etc., rests essentially upon the doctrine of negligence." After a careful review of the authorities, in *Gantt v. Columbia Coca-Cola Bottling Co.,* 193 S. C. 51, 7 S. E. (2d) 641, 127 A. L. R. 1185, the Court held that liability of a manufacturer for the sale of unwholesome foods and beverages is founded upon negligence. In *Hunter v. Allied Mills, Inc.,* 184 S. C. 330, 192 S. E. 356, a dog breeder was allowed to recover damages against a manufacturer although there was no privity of contract, but the action was based upon negligence.

We think it is clear under the foregoing authorities that any liability on the theory of implied warranty is confined to Sansbury Tractor Company from which respondent purchased the tractor, and that an action on such a warranty cannot be maintained against Ford with which there was no privity of contract.

Respondent claims that privity of contract is established by a pamphlet published by Ford and introduced in evidence in which there is discussed at length the construction and various uses that can be made of this tractor, and its superior features emphasized. It is argued that through representations made in this advertising material for the promotion of sales, Ford has assumed a direct contractual liability to anyone purchasing a tractor from a dealer.

There are cases where recovery has been allowed on the theory of *express* warranty without a showing of privity where the purchaser of an article relied on representations made by the manufacturer in advertising material .But the instant action was neither brought nor tried on this theory. There is no reference to the Ford pamphlet in the complaint nor to any representation made in this pamphlet. Respondent elected to proceed on a warranty implied by law and the case was submitted to the jury solely on this theory.

It is also contended that by replacing parts and correcting the defect in the lift, Ford recognized a contractual obligation. Doubtless this was done by Ford under its agreement in the warranty to replace any defective parts. But even if done gratuitously, it would not be evidence of the assumption of a legal obligation. As said in *International Harvester Co. of America v. Law,* 105 S. C. 520, 90 S. E. 186, 187: "It would be a novel doctrine to hold that one or more acts of friendly assistance, done by a dealer in pursuance of the good business policy of trying to keep his customers satisfied, should create a legal obligation to do others, or should have the legal effect contended for in the case."

Respondent strongly relies on *Baxter v. Ford Motor Co.,* 168 Wash. 456, 12 P. (2d) 409, 15 P. (2d) 1118, 88 A. L. R. 521. There an automobile manufacturer was held liable, without regard to privity, to one who had purchased an automobile from a dealer because of breach of representations made by the manufacturer in printed matter furnished by the manufacturer to its dealer, to the effect that the windshield of the automobile was made of shatter proof glass. The action was clearly based on an express warranty. As heretofore pointed out, this action is not based on any misrepresentations contained in the Ford pamphlet but on a warranty implied by law.

In conclusion, it may not be amiss to state that even in the State of Washington and other jurisdictions which permit a remote vendee to recover under certain circumstances on an implied warranty, this action could not be maintained because it does not fall within any of the exception recognized by those courts. *Murphy v. Plymouth Motor Corp.,* 3 Wash. (2d) 180, 100 P. (2d) 30; *Fleenor v. Erickson,* Wash., 215 P. (2d) 885.

The Court erred in refusing appellant's motion for a directed verdict. Judgment reversed and case remanded for entry of judgment in favor of appellant under Rule 27.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.