17737

Dorothy S. BEASLEY, Respondent, v. FORD MOTOR COMPANY, Inc., Appellant

(117 S. E. (2d) 863)

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, *for Appellant,*

*Messrs. James P. Mozingo, III, Benny R. Greer* and *Archie L. Chandler,* of Darlington, *for Respondent,*

January 13, 1961.

STUKES, Chief Justice.

This is an action for damages for negligence in the construction and inspection of a Lincoln automobile, which was brought under the doctrine of the leading case of *MacPherson v. Buick Motor Co.,* 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, recognized in *Odom v. Ford Motor Co.,* 230 S. C. 320, 95 S. E. (2d) 601. See also, annotations, 164 A. L. R. 569 and 74 A. L. R. (2d) 1111. Respondent refers to the rule as that of the liability of a manufacturer to a remote vendee. It is noted that respondent was not a vendee, but the wife of such. However, appellant does not make the point; indeed, it admits in the brief (f. 43) that the complaint stated a cause of action.

There was verdict for respondent for $10,000.00, after denial of the usual defensive motions. On motion *n. o. v.* or, in the alternative, for new trial, the court reduced the verdict to $7,500.00 by order *nisi,* in compliance with which the respondent made remission, and from the judgment entered thereupon for $7,500.00 this appeal has been prosecuted.

Respondent's husband, who is the Clerk of Court of Darlington County, purchased from appellant's Columbia dealer the automobile, as new, in September, 1958. However, it had formerly been in the hands of the Augusta, Georgia, dealer from whom the Columbia dealer purchased it and drove it to Columbia several months before. There it was alternately displayed in the show room and stored in the warehouse which was several miles away, having been driven back and forth numerous times.

A week after the purchase by respondent's husband he drove the car to Columbia, accompanied by respondent and others, for the purpose of attending a night football game at Carolina Stadium. Approaching it the traffic was heavy and it was a process of stop and go, with four lanes of one-way traffic. When a few hundred yards from the stadium a fire occurred under the hood of the automobile. The flames came

out of the front of the car and whipped back almost, at least, to the windshield. The driver and passengers, including respondent, naturally frightened, immediately alighted, without burns or other physical injuries. The driver went back, cut off the ignition and the flames died down. With the help of others they pushed the car to a nearby filling station, summoned a highway patrolman who put out the remaining fire with an extinguisher. Respondent's husband telephoned an employee of the dealer from whom he had purchased the car and he had it moved to its repair shop, providing another car for the use of respondent and her party after the game. Meanwhile they attended the game. It was raining and respondent spent part of the time under the stand. She and her husband then went to the dealer's repair shop where he examined the car, and he testified that he then found a loose connection of the flex (fuel) line where it entered the fuel pump. It was so loose that he could shake it. The dealer loaned to respondent's husband another car in which he and his party returned home and the dealer repaired the Lincoln.

Respondent's husband was called to Columbia by the dealer a few days later and there he met one Hodges who was introduced as a representative of the appellant. In the ensuing conversation Hodges admitted to respondent's husband that the mishap was the fault of appellant. Later there was a similar conversation of about the same content with another representative of appellant.

The first ground of appeal is the contention that appellant's motions for nonsuit, directed verdict and judgment *n. o. v.* should have been granted because there was no evidence of negligence on the part of appellant.

There was expert evidence introduced by appellant which tended to show (1) that the accident could not have happened as claimed because the flex line was so connected to the fuel pump that it could not work loose, (2) gasoline on an automobile motor will not ignite because the motor will not reach a high enough temperature, and (3) the gasoline cannot come in contact with the spark, which would ignite it. Con-

flicting testimony by a local mechanic was offered by respondent. The evidence need not be reviewed in greater detail bcause the admissions of appellant's representatives which were testified to by respondent's husband, made an issue, if otherwise, doubtful, for the jury as to the alleged negligence of appellant. Therefore the first ground of appeal is overruled. We refrain from the expression of any opinion on our part as to the weight of the evidence relating to the issue. Incidentally, if proper objection to the evidence of the admissions had been preserved, a nice question would be presented because of the nature and form of them. 20 Am. Jur. 462, Evidence, sec. 548; Annotation, 118 A. L. R. 1230; *Piedmont Mfg. Co. v. Columbia & Greenville Railroad Co.,* 19 S. C. 353.

As a part of appellant's expert evidence it offered to conduct an experiment by its witness which it was claimed would show that gasoline in contact with a hot metal surface will not ignite. It was proposed to use an ordinary hot plate by the witness on the stand to make the demonstation. Upon objection, the court refused to permit the experiment. Such was within the sound discretion of the trial Judge and we find no error. A hot plate in the hands of witness in the open court room would hardly be comparable to the hot automobile motor under the hood of it; nor was there evidence of the temperature which the hot plate would reach, whether comparable to the motor.

For an experiment to be admissible the conditions of it must be similar, or substantially similar, to the facts under investigation; and this must be determined by the trial Judge. After finding such similarity the court will exercise its discretion as to whether the experiment will be permitted. 20 Am. Jur. *627 et seq.,* Evidence, secs. 755 *et seq.* "The admission of evidence of experiments or permitting them to be performed in court is a matter peculiarly within the discretion of the trial court, and this discretion will not be interfered with unless it is apparent that it has been abused." Sec. 755. In this case the result which it was claimed the pro-

jected experiment would show was testified to by the witness. There was no abuse of discretion by the court.

For the purpose of consideration of appellant's last question the evidence relating to respondent's injuries will be stated.

She testified that the fire frightened her terribly, made her extremely nervous. After she returned home about midnight she was slightly nauseated and could not sleep, called her family physician next morning, he came and prescribed phenobarbital which she was still taking at the time of the trial about a year later, was still nervous, suffered from night-mares and did not sleep well, was afraid of automobiles (although she admitted that she was still driving the car), has trouble concentrating, cannot help her high school son with his studies as formerly and was still under the doctor's care. It is noted that after the fire she accompanied her husband to the game although it was raining and she testified that she spent some of the time under the stand.

Respondent's husband testified that the accident made respondent very nervous, a poor sleeper and irritable, which she was not before. At the time of the accident, quoting, "she was white as a sheet", and "didn't act normal."

The physician, who is old and deaf and has been mayor of the town of Lamar for thirty years, had no records and had to be prompted to recall the time of the fire, on the next day after which he was called to respondent who told him about the fire and that she had been unable to sleep on the night after it and complained of nervousness. He gave her pheno-barbital and had since given her "a little medicine at times along", having seen her ten or twelve times during the inter-val between the accident and the trial about a year later. There was no other medical testimony. There was no hos-pitalization or evidence of other expense incurred by respond-ent. Indeed, there is no evidence that she was even confined to bed for any time. She was not gainfully employed, so there was no loss of wages.

It is seen that the evidence of injury was slight, at best, and the verdict, even as reduced by the trial Judge, was out of all reasonable proportion to the injury. The appellant did not contend at the trial that there was no evidence to establish recoverable damages. However, there was contention there, and here on appeal, that the verdict was grossly excessive and the result of caprice, prejudice and bias, whereby appellant is entitled to a new trial absolute. With this we are constrained to agree.

In the complaint the damages were laid at $10,000.00, including actual and punitive. Upon timely motion by appellant, and with the assent of respondent, the issue of puntive damages was withdrawn from the jury. Yet they returned verdict for $10,000.00 actual damages, which was the full original amount sought in the complaint for actual and punitive damages. This rather conclusively showed disregard by the jury of the issues and the instructions of the court, or their failure to heed them. It is clear that the verdict was based upon considerations not founded on the evidence, which is the common expression of our cases on the subject.

A frequently quoted or paraphrased criterion was laid down by Chancellor Kent in an early New York case, as follows: "The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess." *Coleman v. Southwick,* 9 Johns. 45, 6 Am. Dec. 253. Note, Damages, by Marshall T. Mays, Esq., 11 S. C. Law Quarterly 35.

The following is from 15 Am. Jur. 623, Damages, sec. 205: "A close analysis of the results reached in the cases justifies the statement that the courts generally grant relief if convinced that the verdict substantially exceeds any ra-

tional appraisal or estimate of the damages even though the inference of passion, prejudice, partiality, or other improper motive on the part of the jury is no more natural or reasonable than the inference of mistake or misapprehension on their part. Like thought was expressed in *Nelson v. Chas. & W. C. Ry. Co.,* 231 S. C. 351, 98 S. E. (2d) 798, 802, where judgment was reversed for excessive verdict, as follows: "The delicate question is whether the compensation awarded for these elements is so grossly excessive as to warrant the inference that it was the result of caprice, passion, prejudice or other considerations not founded on the evidence. This phrase like the unhappily framed expression 'abuse of discretion' is frequently misunderstood. We have held that the term 'abuse of discretion' does not 'carry with it an implication of conduct deserving censure', *Payne v. Cohen,* 168 S. C. 459, 167 S. E. 665, 668, and does not imply 'any reflection' upon the person in whom the discretion is vested. *Bishop v. Bishop,* 164 S. C. 493, 162 S. E. 756. So, too, the phrase 'passion and prejudice' does not necessarily imply bad faith, wrongful purpose or moral delinquency. *Zibbell v. Southern Pacific Co.,* 160 Cal. 237, 116 P. 513. In *Watson v. Paschall,* 100 S. C. 281, 84 S. E. 531, 532, this Court said that 'a verdict may properly be said to be capricious if it is against the overwhelming weight of the evidence.' "

No case has been cited, and we know of none, where a comparable verdict for actual damages has been sustained upon evidence of injuries as slight as those suffered by the respondent here. We cannot in good conscience avoid reversal. We quote again from the *Nelson case, supra*: "Even after giving due consideration to the diminished purchasing power of the dollar, we are convinced that upon the scant evidence presented, a verdict * * * is not supported by the evidence and cannot be explained on any rational basis. Whether it was the result of sympathy, passion or prejudice or whether it was due to mistake or misapprehension of the charge and issues involved, the result is the same. In the

discharge of our duty we cannot escape the responsibility of setting it aside."

Reversed and remanded for new trial.

TAYLOR and Moss, JJ., concur.

OXNER and LEGGE, Justices (concurring in result).

In our opinion, the record reveals no injuries for which damages may be recovered. *Cp. Bosley v. Andrews,* 393 Pa. 161, 142 A. (2d) 263; *Reed v. Moore,* 156 Cal. App. (2d) 43, 319 P. (2d) 80. But the question is not raised by any exceptions. Accordingly, we concur in the result.