**Delores BROWN, Plaintiff,**

v.

**FORD MOTOR COMPANY, Inc., a Corporation, Defendant.**

**Sandy BROWN, Plaintiff,**

v.

**FORD MOTOR COMPANY, Inc., a Corporation, Defendant.**

**Helen BROWN, Plaintiff,**

v.

**FORD MOTOR COMPANY, Inc., a Corporation, Defendant.**

**Civ. A. Nos. 67–597–67–599.**

United States District Court
D. South Carolina,
Charleston Division.

July 31, 1968.

---

John Howard Wrighten, III, Daniel E. Martin, F. Henderson Moore, Charleston, S. C., for plaintiffs.

William H. Grimball, Grimball & Cabaniss, Charleston, S. C., for defendant.

## OPINION AND ORDER

DONALD RUSSELL, District Judge.

These three actions, consolidated for the purpose of motion for summary judgment in each of the actions, seek recovery for injuries and damages sustained by the driver, a passenger, and the owner of an automobile manufactured by the defendant which, while being driven in the late afternoon of April 19, 1965, along State Highway 171 from James Island to Charleston, South Carolina, got out of control and crashed into a bridge. The plaintiffs base their right of action against the defendant manufacturer on the claim that the accident and their resulting injuries and damages were due to the malfunctioning of a defective steering mechanism installed negligently

and in violation of defendant's warranty, express[1] and implied.

The actions were filed something over two years after the accident. Both the original and amended complaints described the alleged defect in the steering mechanism in general terms (i. e., "a complete and total break in the steering assembly"). By interrogatory promptly addressed to the plaintiffs under Rule 33, Federal Rules of Civil Procedure, the defendant demanded specification by the plaintiffs of the defect on which they predicated their right of action. To such interrogatory, the plaintiffs replied, "The Parts of the steering assembly that was defective was the entire steering mechanism." At a pre-trial conference held sometime after the plaintiffs had given this answer, the Court held that, in connection with the plaintiffs' answer to the interrogatories, the "defendant is entitled to some specific detail as to what he is faced with." Apparently, in an effort to satisfy the right of the defendant and supply specificity to plaintiffs' claim of defect, the Court ordered the parties to exchange lists of their expert witnesses in order that the parties might by deposition identify the alleged defect and explore its causal relation to the accident. The Court concluded its Order with the observation that such procedure "may result in the final disposition" of the cases. Following the entry of this Order, the plaintiffs furnished the defendant with the names of the three expert witnesses on whom they relied for their proof of a defective steering mechanism. The defendant deposed these three experts, as well as the plaintiff-driver.

At the hearing before me, counsel for the plaintiffs frankly conceded that the testimony embraced within the depositions of the three experts and the plaintiff-driver represented the full extent of their testimony in support of the claim of defect in the steering mechanism; and, unless that evidence sufficed to make out an actionable case of liability, it was admitted by the plaintiffs that they were without remedy against the defendant. Plaintiffs contended that, under the principles enunciated in Henningsen v. Bloomfield Motors, Inc. (1960) 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1, the evidence was sufficient. The defendant urges that such evidence, as a matter of law, will not support an action against defendant and accordingly moves for a summary judgment. These conflicting positions pose the issue for determination.

From the depositions, it appears that the car involved in the accident was manufactured by the defendant and sold to the wife of the plaintiff-driver by one of the defendant's authorized dealers some eleven months before the accident. It was used by the plaintiff-driver and his wife as a family car. At the time of the accident, it had been driven about 16,000 miles and had had a number of tire changes. When the accident occurred, the plaintiff-driver was taking his two passengers, one of whom was his daughter, and the other a school classmate of hers, to Charleston to enable them to catch a bus for return to college. The road was "wet" and it was raining at the time. When they were about one hundred yards from a bridge across the highway along which they were traveling, the driver of the car noted that the steering wheel of the car "started to turn around" and "just kept turning continual"(ly). No noise or racket was heard at the time. The driver lost control of the car. Confused, he made no

---

1. The express warranty, as alleged by the plaintiffs, was confined to an assurance against "defects in material and workmanship." Recovery for breach would require proof of defect. Moreover, the warranty seeks to confine the right of recovery under the warranty to replacement of the defective part.

Actually, the modern rule of strict liability for manufacturers has assimilated both the negligence and the warranty principle of liability and largely made useless the distinctions between actions in negligence and in warranty, express or implied. Schenfeld v. Norton Company (C.A. 10th Cir. Colo.1968) 391 F.2d 420, 422–423.

endeavor to use his brakes, though he did take his foot off the accelerator. Uncontrolled, the car moved toward the right and crashed into the bridge.

After the accident, the car was removed to a nearby garage. No examination was made of it. The plaintiff-driver did visit the garage and remove the license plates from it about a month after the accident. At such time, however, no one inspected its steering mechanism or made any endeavor to ascertain whether such mechanism was defective. Some time after these suits were filed (which was over two years after the accident), the plaintiff-driver went to the garage where the car had been left to inspect its steering mechanism. He was told it had been sold "for junk", apparently in order to meet storage charges. He made no further effort to trace the car.

Prior to the accident, neither the plaintiff-driver nor his wife had had any complaints about the performance of the car, had experienced any difficulties in its use, or had observed any malfunctioning of any of its parts, including those of its steering mechanism.

No one of the three expert witnesses on whom the plaintiffs rely to establish a defect in the car's steering mechanism had ever seen the car in question or made any examination of its steering mechanism. All of them disclaimed an ability to fix the probable cause of the failure of the steering mechanism or to ascribe such failure to a specific defective part or design of such mechanism. All three affirmed that on a car which had been driven 16,000 miles over a period of eleven months, many circumstances, including "wear and tear" or a severe bump, could cause a failure of its steering mechanism. The extreme reach of their testimony is that, under the facts given by the plaintiff-driver, "something went wrong with the steering mechanism". When pressed to be more particular, the witnesses said at least twenty things could have caused the malfunctioning but affirmed the impossibility of identifying what may have been the cause. This is the extent of the evidence available to establish a defective steering mechanism, a mechanism with over one hundred moving parts according to one of the plaintiffs' experts.

The first question presented is the propriety of summary judgment in cases such as those of the plaintiffs. " * * * as a general proposition issues of negligence are ordinarily not susceptible of summary adjudication, but when the moving party clearly establishes that there is no genuine issue of material fact, summary judgment may be rendered." Berry v. Atlantic Coast Line Railroad Company (C.C.A.S.C.1960) 273 F. 2d 572, 582, cert. denied 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011. In the present cases, as I have already observed, the plaintiffs have, in opposition to the motion, put into the record all the evidence they, by their own statement, can produce on the ultimate question of defendant's liability; the defendant, accepting such facts for purposes of its motion and thus eliminating any "issue of material fact", asserts that on such record there is no basis for liability on the part of the defendant. There is thus no disagreement between the parties on the material facts concerning liability; their difference involves solely whether such facts as a matter of law will support a verdict. While there may be some justification for denying summary judgment, even though, on the record then before the Court, a motion for directed verdict would be warranted, since the parties may be able to improve their record if given a trial (Pierce v. Ford Motor Co., C.C.A.Va. 1951, 190 F.2d 910, 915, cert. denied 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666) such reason does not prevail when plaintiffs themselves freely concede that the record before the Court on summary judgment is all that is available to them on the issue of liability. Under those circumstances, if the facts established in such record are insufficient as a matter of law to sustain liability, it would be a waste of the time of both court and

litigants to require an extended trial; summary judgment would appear proper. This is such a case.

 Turning to the substantive issue: Although the South Carolina law, controlling in this case under the *Erie* doctrine,[2] upholds generally the liability of a car manufacturer for injuries sustained as a result of a defect in the car's installed mechanism or construction,[3] a plaintiff's right of recovery in such case may not rest on the presumption arising from the mere accident itself[4] or on any doctrine of *res ipsa loquitur.*[5] His right of recovery must be predicated upon proof, either direct or circumstantial, that there was a defect in the mechanism or its design and that it was reasonably probable that such defect was the cause of the injuries; and the burden of establishing both such defect and its causal connection with the accident rests on the plaintiff.[6] Moreover, his proof must rise above surmise, conjecture or speculation.[7]

The recent case of Messier v. Adicks, S.C., 161 S.E.2d 845 (filed June 5, 1968),

2. Erie R. Co. v. Tompkins (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

3. Salladin v. Tellis (1966) 247 S.C. 267, 271, 146 S.E.2d 875; Beasley v. Ford Motor Co. (1961) 237 S.C. 506, 508, 117 S.E.2d 863; Odom v. Ford Motor Co. (1956) 230 S.C. 320, 326, 95 S.E.2d 601.

4. Sierocinski v. E. I. Du Pont De Nemours & Co. (C.A.Pa.1941) 118 F.2d 531, 535. In Boyd v. Marion Coca-Cola Bottling Co. (1962) 240 S.C. 383, 385, 126 S.E. 2d 178, 179, involving injuries due to explosion of a bottle of carbonated beverage, it was held that " ' * * * proof of injury caused by the explosion of a single bottle containing a carbonated beverage, standing alone, would not be sufficient to make out a case of actionable negligence' " against the vendor.
 See, also, Jack Roach-Bissonnet, Inc. v. Puskar (1967) Tex., 417 S.W.2d 262, 278 (involving as here a claim of defective steering mechanism in a Ford automobile), where the Court concluded in affirming a directed verdict for the manufacturer: " * * * what caused the malfunction on the occasion in question is not disclosed and cannot fairly be inferred from the evidence. It is our opinion that under the facts of this case, the single unexplained failure (of the steering mechanism) does not in itself establish that the steering mechanism was not of the character or quality indicated by the manual."

5. Eickhoff v. Beard-Laney, Inc. (1942) 199 S.C. 500, 503–505, 20 S.E.2d 153, 141 A.L.R. 1010; Delk .v. Liggett & Myers Tobacco Co. (1936) 180 S.C. 436, 443, 186 S.E. 383; Boyd v. Marion Coca-Cola Bottling Co. (1962) 240 S.C. 383, 385, 126 S.E.2d 178.

6. Roddis Panel & Door Co. v. Cecil's, Inc. (D.C.S.C.1956) 145 F.Supp. 764, 768; Hardward v. General Motors Corp. (1952) 235 N.C. 88, 68 S.E.2d 855, 858.

7. Ford Motor Company v. McDavid (C.C. A.S.C.1958) 259 F.2d 261, 266, cert. den. 358 U.S. 908, 79 S.Ct. 234, 3 L. Ed.2d 229; New Amsterdam Casualty Company v. Gray (1960) 253 N.C. 60, 116 S.E.2d 146, 147. See, also, Delk v. Liggett & Myers Tobacco Co. (1936) 180 S.C. 436, 443, 186 S.E. 383.
 In the *McDavid* Case, the plaintiff claimed injuries resulting from a misalignment of the front wheels of a car manufactured by defendant. Examination of the car after the accident "disclosed no mechanical defect" nor was there anything "in the record to show how or when the front wheels became misaligned" in such case. The evidence was found to be "so tenuous that it rests merely upon speculation and conjecture." 259 F.2d pp. 265, 266.
 In New Amsterdam Cas. Company v. Gray, supra (p. 147, 116 S.E.2d), the Court said: "If the automobile was defective in any respect, the record fails to disclose any evidence, direct or circumstantial, tending to show what the defect consisted of. * * * Recovery may not be predicated on conjecture."
 See, also, Markwell v. General Tire and Rubber Company (C.C.A.Ind.1966) 367 F.2d 748, 750, where the Court said: " * * * in the absence of proof of the existence of a defect, (in its product) a defendant (manufacturer) may not be held liable for negligence in manufacture or responsible on the theory of implied warranty" and this rule is "equally applicable to express warranty cases."

illustrates the application of these principles by the South Carolina Courts. This is not a products liability case but the principles enunciated are generally applicable.[8] There a guest of a hotel sued for injuries sustained when he stumbled and fell down the stairs. Proof of inadequate lighting and defective bannisters and stairs was offered. Plaintiff, however, was unable to fix definitely the cause of his stumbling. The Court remarked that, "The real cause of the fall is left in doubt. If plaintiff tripped over a coca cola bottle, a piece of pipe, or other object negligently left in the path of guests, defendant might be liable for the resulting injuries; but defendant would not be liable if plaintiff tripped over his own pants leg." In finding that the plaintiff was without a right of action, the Court concluded:

"We therefore have a situation where the cause of plaintiff's injury may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable. Several possible causes of plaintiff's fall have been suggested but there is no showing that the fall probably resulted from a cause for which defendant was responsible. Under these circumstances, the general principle applies that where the cause of plaintiff's injury may be as reasonably attributed to an act for which defendant is not liable as to one for which he is liable, plaintiff has failed to carry the burden of establishing that his injuries were the proximate result of defendant's negligence." [9]

Turning specifically to the facts in these cases: as in the *McDavid* and *Gray* Cases, supra, there is no direct evidence in these cases of any defect of either workmanship or material in the steering mechanism of the car. The plaintiffs suggest that the car was so damaged that discovery of a defect was impossible. This conclusion, however, is purely speculative. The plaintiff-driver never inspected the car or endeavored to examine the steering mechanism of this car until after these suits were brought, more than two years after the accident.[10] He is in no position to affirm that the steering mechanism was too damaged for examination for defect. Nor has any one else done so. Nor is there any circumstance other than the accident itself that points to a defect. This, in short, is a record barren of any identification of defect either by direct or circumstantial evidence, in the apparatus that plaintiffs allege was defective.

Unlike a number of cases in which the right of a purchaser to recover of the car manufacturer for injuries sustained because of the alleged failure of some part of the car was sustained shortly after its purchase, this car had been driven some eleven months and about 16,000 miles without one single complaint of malfunctioning of the steering mechanism. In Duckworth v. Ford Motor Com-

---

8. Whether federal or state law prevails on the sufficiency of evidence in a diversity case is an open question. Dick v. New York Life Ins. Co. (1959) 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935; Grand Island Grain Co. v. Roush Mobile Home Sales, Inc. (1968) 8 Cir., 391 F.2d 35, 41. In Lovas v. General Motors Corp. (C.C.A.Ohio 1954) 212 F.2d 805, 807, the Court assumed the State rule prevailed. So far as applied to the facts of this case, it does not appear that there is any difference between the rule in the *Messier* Case and in the *McDavid* Case, supra.

9. Delk v. Liggett & Myers Tobacco Co., supra, represents the application of this rule to a. products liability case.

10. The reason for the delay apparently was that, immediately after the accident, actions contemplated were to be against either the driver of the car or its owner. It was only some two years later and after the plaintiffs had been advised that their rights to sue among themselves were at best doubtful, that action against the car manufacturer was determined on.

pany (D.C.Pa.1962) 211 F.Supp. 888, mod. 3 Cir., 320 F.2d 130, on the contrary, the purchaser had trouble with his steering mechanism within three days after his purchase of the car. When he had his 1,000 mile check-up, he again complained of the steering. About five days later, as a result of the failure of the steering apparatus, he had a wreck. After the accident, it was discovered that the difficulty in the steering was caused by an insecure jam nut, which, if properly installed, would have prevented the play in the steering. See, to the same general effect: Cordle v. Renault, Inc. (C.C.A.Tenn.1966) 361 F.2d 332 and Smith v. Hencir-Nichols, Inc. (1967) Minn., 150 N.W.2d 556.

These cases are also unusual in that the plaintiffs make no attempt to identify what caused the malfunctioning of the steering mechanism. They, like the plaintiff in United States Rubber Company v. Bauer (C.C.A.N.D.1963) 319 F.2d 463, 467, offer no proof as to the cause of the failure in the steering mechanism. They reply, as the plaintiff did in Harward v. General Motors Corp., supra (p. 858, 68 S.E.2d): "Whether the failure of the steering gear to fit as indicated by the plaintiff and his witness was due to natural wear or hard and fast driving or lack of lubrication is left in doubt." Whether the malfunctioning resulted from "wear and tear" or from some bump sustained during the eleven months the car had been driven is purely speculative. See Breck v. Rollaway Motor Co. (1926) 23 Ohio App. 79, 155 N.E. 147.

This is quite the reverse of Pierce v. Ford Motor Co. (C.C.A.Va.1951) 190 F.2d 910, for instance, where the purchaser of a new car, used "less than two weeks" and "driven less than 900 miles"

before the accident out of which the action arose, offered positive proof that the accident resulted from too loose adjustment of the tie-rods, which, in view of the short lapse since purchase, probably existed at time of delivery. Similarly, in Jarrell v. Ford Motor Company (C.C. A.W.Va.1964) 327 F.2d 233, 234, the cause of the accident, on account of which the car manufacturer was sued, was identified as the failure to install a compression washer on a retaining pin assembly, causing a wheel to lock and resulting in the accident. Likewise, in Beasley v. Ford Motor Co. (1961) 237 S.C. 506, 117 S.E.2d 863, the purchaser of a new car, less than a week old, sued for fire damages, but he proved that the cause of the fire was "a loose connection of the flex (fuel) line where it entered the fuel pump." p. 509, of 237 S.Ct., p. 864, of 117 S.E.2d. Moreover, a representative of the manufacturer admitted "the mishap was the fault of appellant." [11]

The cause of this accident, the cause of any malfunctioning of the steering mechanism, is, as the plaintiffs concede, uncertain. There is no proof of what in the steering mechanism broke, if it did break, or why. There is no proof of a defect in the steering mechanism, in its materials or workmanship. The plaintiffs themselves offer no explanation for the accident or for the malfunctioning of the steering apparatus. Their expert witnesses profess an inability to fix the cause. No one of them seeks to identify any part of the steering mechanism as defective or to suggest why such mechanism failed to function. Under the testimony of the experts, the unexplained accident may be as reasonably attributed to ordinary "wear and tear" or to a bump experienced in the normal use of the car as to a failure of one of the some one hundred parts in the steering mechanism. The cause of the accident is, under this

11. Evans v. General Motors Corporation (C.C.A.Ind.1966) 359 F.2d 822, 825, cert. denied 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed. 2d 70, lists additional cases presenting similar situations in which the specific defect was identified and explained as cause of accident.

record, a matter of surmise, speculation and conjecture.[12]

In Henningsen v. Bloomfield Motors (1960) 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1, on which plaintiffs rely, there were other circumstances than the accident itself to support the claim of defect in the steering mechanism. While the steering mechanism in that case was so damaged "that it was impossible to determine if any of the parts of the steering wheel mechanism or workmanship or assembly were defective" the proof indicated that the driver of the car, which had been purchased just ten days before, had been driven only on short trips about town, had been involved in no mishaps or servicing, and was proceeding along a paved and smooth road, suddenly "heard a loud noise 'from the bottom, by the hood.' " She felt "as if something cracked", then the steering wheel spun in her hands and the car crashed. Because of the noise and appearance of something cracking just before the accident, it was testified that in a new car, properly serviced and driven such a short time, without opportunity for other cause of accident, "something down there had to drop off or break loose to cause the car" to act in the manner described. None of those special circumstances is present in these cases. There was no noise of breaking parts. The car had not just been purchased and driven only on short trips. It had been used eleven months and had been driven 16,000 miles. It had been subjected to "wear and tear".

In these cases, plaintiffs' proof of defect and of causal relation to such defect to the accident out of which their actions arise amounts to mere surmise and speculation. As such, it will not, as a matter of law support an action. The motion for summary judgment in each of the above entitled actions is accordingly appropriate, and

It is so ordered.

12. For an exposition on the application of "conjecture" in this connection, with special reference to a products liability case, see, Ford Motor Company v. McDavid, supra, and Rex Paper Company v. Reichhold Chemicals, Inc. (D.C.Mich.1966) 252 F.Supp. 314, 319.