15668

McKENZIE v. PEOPLES BAKING COMPANY

(31 S. E. (2d), 154)

Reversed and remanded for á New Trial.

*Mr. Ashton H. Williams,* of Lake City, S. C., Counsel for Appellant,

*Messrs. Royall & Wright,* of Florence, S. C., Counsel for Respondent,

July 26, 1944.

Mr. Associate Justice Stukes delivered the majority Opinion of the Court, with Mr. Chief Justice Baker dissenting in an Opinion concurred in by Mr. Associate Justice Taylor. The Opinion of the Court follows:

This is an appeal from an order of nonsuit which was granted at the conclusion of plaintiff's testimony in the trial of the case in the Civil Court of Florence, in May, 1943, and the similar refusal of a motion for a new trial. The record contains only the order of the trial Judge thereabout and the exceptions. From the former it is gleaned that plaintiff purchased from a Lake City retailer a five-cent cake which was manufactured and sold by the defendant, and that when attempting to eat it, plaintiff's gums were cut by a sharp piece of steel which was embedded in the cake, resulting in pain and suffering from mouth injuries for which she sought damages.

Confirming nonsuit and refusing plaintiff's motion for a new trial, the Court filed a formal order, mentioned above, which latter recited that there was no evidence of common law negligence in the manufacture of the cake and that the Pure Food Statute (section 5128 *et seq.* of the 1942 Code) is not applicable because, it being penal in its nature and in

derogation of the common law, it should be strictly construed and that the piece of steel was not an ingredient of the cake for it was not a component part; and it was held that the Legislature by its enactment, did not intend the statute "to have any scope beyond a very strict meaning of its terms." The only South Carolina decision cited for the holding was *Delk v. Liggett & Myers Tobacco Co.*, 180 S. C., 436, 186 S. E., 383, which is later herein distinguished.

There was error in applying a strict construction of the law which was a departure from the former decisions of this Court upon the subject, some involving food and some involving drinks. See the collation of the cases in 16 S. E. Dig., Food, p. 203 *et seq.*, and Pocket Part. The statute has a criminal side and if the defendant were resisting a prosecution for its violation, strict construction might be in order, the latter now unnecessary to decide. But careful reading of the rather lengthy law is convincing that its primary intention was the protection of the people of the State from impure and adulterated food, drug and drink, soft and strong. Such statutes are given generally in civil actions a fair and reasonable interpretation, perhaps properly designated "liberal," in order to effectuate the purpose of protecting the public from imposition, fraud and negligence of food, drug and drink manufacturers, processors and vendors. 22 Am. Jur., 819, 36 C. J. S., Food, § 10, p. 1064.

It is by no means new in our law to hold that statutes of a double aspect (penal and remedial) may be given a liberal construction in the civil courts when applied remedially, and yet be strictly construed in the criminal courts, when one is prosecuted in the latter for a violation. Such was done in *Newsom v. F. W. Poe Mfg. Co.*, 102 S. C., 77, 86 S. E., 195, 198, where it was said: "A statute may be both remedial and penal. In construing such a statute, the courts should construe that position (portion?) that applies to the enforcement of the remedy liberally. In the enforcement of the penalty, a strict construction should be

given. The remedy must not be destroyed by the penalty, if practicable. We are now on the civil side of the court." And the following well-phrased quotation is from the opinion in *Trammell v. Victor Mfg. Co.,* 102 S. C., 483, 86 S. E., 1057, 1058: "We should not overlook the fact that the statute is remedial, as well as penal. In so far as it is remedial, it should be construed liberally, to suppress the mischief it was designed to remedy." See also the enlightening concurring opinion of former Chief Justice Blease in *State v. Firemen's Ins. Co.,* 164 S. C., 313, 162 S. E., 334.

A strict interpretation of the Pure Food Statute was indicated in our decision of *Delk v. Liggett & Myers Tobacco Co.,* 180 S. C., 436, 186 S. E., 383, *supra* (the sole South Carolina authority cited by the trial Court), but there it was held that chewing tobacco, involved in that case, was not food or drink, so does not come within the statute. For that reason the case is quite distinguishable and should be differentiated from our decisions construing and applying the statute for the facts require it, as was said by this Court in the case of Irick, *infra.*

Our case of *Irick v. Peoples Baking Co.,* 187 S. C., 238, 196 S. E., 887, just referred to, is a plain and pointed precedent for the present decision. It held that evidence of violation of the Pure Food Statute implies negligence and requires submission to the jury of the issue thereby raised, and that this is true even if the testimony negatives negligence in the manufacture of the food. It involved particles of glass in a cake and there is no discernible difference between such and the steel here alleged. That violation of the statute is negligence *per se* was firmly established, if any doubt existed before, by *Gantt v. Columbia Coca-Cola Bottling Co.,* 193 S. C., 51, 7 S. E. (2d), 641, 127 A. L. R., 1185, which contains an excellent review of the prior cases. See also the subsequent similar decision of *Hobbs v. Carolina Coca-Cola Bottling Co.,* 194 S. C., 543, 10 S. E. (2d), 25.

Section 5128, volume 3, p. 249, of the Code of 1942 (our Pure Food Statute), provides that an article of food shall be deemed to be adulterated (b) (1) "if any substance or substances has or have been mixed with it so as to reduce or lower or injuriously affect its quality or strength," and again (7) "if it contains any added poisonous ingredient, or any ingredient which may render such article injurious to the health of the person consuming * * *."

The steel here was a substance mixed with the cake, a food, which "reduced or lowered or injuriously affected its quality," thus in literal violation of (1) above. Any other construction of the language would be a strained one, and would defeat the manifest intention of the Legislature in the enactment of the statute, which plainly was, as has been said, for the protection of the consumer.

Again, (7) is also applicable to the allegations in the instant case; the steel was an ingredient which rendered the cake "injurious to the health of the person consuming." The lower Court held that the steel was not an "ingredient" as that term is used in this subsection (7), and that the latter contemplates only an ingredient in the sense of a component or intended part of the cake. But such contention might be made concerning some harmful drug accidentally or unintentionally added to the usual components of cake, and yet the statute forbids the addition to a food of a "poisonous ingredient." A usual and intended ingredient is not apt to be "poisonous" or "injurious to health," so the contended construction would result in the practical elimination of all of this language from the Act, which cannot be said to be within a fair or reasonable interpretation of the language of the Legislature.

While the ordinary dictionary definition of "ingredient" is that which enters into a compound, or is a component part of any combination or mixture, yet its literal meaning, derived from the Latin original is "to

go into, to enter." And the definition of "component" found in Webster's New International Dictionary, Second Edition, Unabridged, 1939, contains the following helpful reference to the meaning: "Ingredient primarily suggests a mixture (such as a drink, a medicine) rather than a compound; as, 'The ingredients of our poisoned chalice' (Shak.). Similarly, in its figurative uses it suggests rather something which enters (see etym.) into a composition than an essential part; as, 'A little grain of romance is no ill ingredient to preserve and exalt the dignity of human nature' (Swift)."

That the Legislature did not intend "ingredient" in the restricted meaning found by the lower Court is seen by reference to subsection (3) of sec. 5128 (referring to food or drink) where that limited meaning is expressed by use of the word "constituent"; and in (c), relating to liquors but a part of the same section, where the words "substance" and "ingredient" are used interchangeably: "If it contains any substance or ingredient not normal or healthful," etc. It will hardly be said that bits of steel in "hard liquor" violate the pure food law but not so in the case of cake. But that would be the result of the lower Court's construction of an "ingredient" of a food to mean, in effect, a "constituent."

Pertinent also in this connection is the use of the word "added" in subsec. (7);—"any added poisonous ingredient," etc., implies clearly that the meaning of "ingredient" is not limited to "component part" or "constituent." See subsec. 3. The objectionable ingredient referred to is one "added," therefore not a component part or constituent, but yet an ingredient. The meaning intended clearly is a substance included in the product—here, steel in a cake—which is injurious.

The meaning of subsec. (7), just referred to, is clarified by amplification in sec. 5128-27(2), fifth, (III 1942 Code 261), as follows: "If it (food, here cake—interpolated) contain any added poisonous or other added deleterious ingredient, which may render such article injurious to health,"

it is adulterated, expressly under this section of the law. It was this subsection which was applied in, and controlled the decision of, the *Gantt case, supra,* but it received scant, if any, attention in the trial of this case. Bluestone, there, was no more an ingredient of the bottled drink than was the piece of steel of the cake here.

The inevitable conclusion from the foregoing analysis of the manifold provisions of the statute is that the inclusion of a harmful foreign substance in cake prepared for human consumption (food) is a violation of our Pure Food Statute and negligence *per se,* and that Irick's case, *supra,* was correctly decided and should be adhered to, and it is. Nonsuit should not have been granted upon a contrary conclusion, as it was. Assuming that the facts in evidence, other than that involved in the appeal, warranted submission of the case to the jury (and the case was argued and heard upon such assumption), it should have been so submitted.

Reversed and remanded for a new trial.

Messrs. Associate Justices Fishburne and Oxner concur.

Mr. Chief Justice Baker, dissenting:

It appears to me that the decision of this Court as reflected in the opinion of Mr. Justice Stukes will tend toward the creation of confusion in a field of law that is of great importance to manufacturers and to the consuming public alike. The precise question raised in this case has not heretofore been passed upon by us. Whatever the disposition of the present case may be, no doubt should be left as to the intent of the Court and as to the Court's conception of the meaning of the pertinent statutory provisions. Because I am convinced that the Court has reached the wrong conclusion, and has mistakenly based its conclusion upon an inapplicable case, I am constrained to dissent.

A very meagre record, in which neither pleadings nor testimony are set out, discloses to us this simple state of

facts : The appellant purchased from a merchant a cake which had been baked by the respondent, and sold by the respondent to the merchant for resale at retail; in eating the cake, the appellant received a severe cut in her gums from a sharp piece of steel which was embedded therein, as the result of which she suffered much pain and sustained severe injuries to her gums and mouth. It is charged that the injuries were caused by the gross and willful negligence of the respondent in stated particulars, none of which refer to any statutory provision.

At the trial of the case below, a motion for a direction of verdict in favor of the respondent was granted, upon the ground that the appellant had failed to prove negligence on the part of the respondent.

As far as the record discloses, the South Carolina pure food statute came into the picture only in the arguments before the trial Judge. He held that there was no evidence of common-law negligence, and that no presumption of negligence arose under the statute merely upon proof of the presence of the foreign substance in the cake.

In the brief of the appellant it is admitted that unless the pure food statute applies, giving rise to a presumption of negligence from mere proof of the fact that the statute has been violated, the testimony offered on behalf of the appellant was not sufficient to send the case to the jury. The exceptions similarly limit the problem before us to the single question whether the pure food statute is applicable, and if so, whether it has been violated. .

The pure food statute is contained in Section 5124 *et seq.*, of the Code. The provisions which are declared applicable in the majority opinion are that an article of food shall be deemed to be adulterated:

"If any substance or substances has or have been mixed with it so as to reduce or lower or injuriously affect its quality or strength." Sec. 5128(b) (1).

"If it contains any added poisonous ingredient, or any ingredient which may render such article injurious to the health of the person consuming: * * *." Sec. 5128(b) (7).

"If it contains any added poisonous or other added deleterious ingredient, which may render such article injurious to health: * * *." Sec. 5128-27(2); sub-div. Fifth.

The trial Judge expressed the view that the statute must receive a strict construction, "because it is not only a penal statute, but it is also in derogation of the principles of common law negligence." And the opinion to which this dissent is written states that this was error. The point is made that if the present case were a criminal case, a strict construction of the applicable statutory provisions might be called for, but that in a civil action the rule does not apply, and that the construction to be given the law must be one that is "fair and reasonable" or "liberal" to effectuate the purpose of the legislation.

In the case of *Delk v. Liggett & Myers Tobacco Co.*, 180 S. C., 436, 186 S. E., 383, the rule declared by the trial Judge in this case was stated, and there is high authority for this view in other jurisdictions. *Johnson v. Stoddard*, 310 Mass., 232, 37 N. E. (2d), 505, 140 A. L. R., 186. But it is unnecessary to deal with that question because in the writer's opinion there is no occasion to construe the statute in relation to the facts of the present case. The pertinent words are words in general use and of a commonly accepted signification.

On a proper state of facts, showing or implying responsibility on the part of the manufacturer for the presence of steel in the cake, due to negligence in the process of manufacture or in the handling and distribution of the product, the cases of *Irick v. Peoples Baking Co.*, 187 S. C., 238, 196 S. E., 887, and *Delk v. Liggett & Myers Tobacco Co., supra*, show that liability existed at common law. But this common-law liability had limitations which were deemed detri-

mental to the public interests, and for the purpose of expanding the field of liability in relation to the manufacture and sale of food, the statute was enacted to impose liability when ingredients of a product sold are poisonous or deleterious, so as to be injurious to health.

A piece of steel is not, under the facts of this case, a poisonous substance; nor is its presence in a cake an ingredient of the cake in any common or technical significa-tion of the term. Neither can it be said that in the sense of a statute which deals with the introduction into food products of substances that impair their quality or strength, the word "mixed" can be held to apply to anything other than a sub-stance which enters into the composition of the finished product. It is elementary that the words of a statute will not be expanded or distorted to encompass a case outside of their scope, or outside of the meaning which in ordinary parlance the words must have meant to the legislative mind, and that is especially true in a case where to adopt the suggested broader construction is in effect to judicially legislate into the meaning of the words used an additional meaning which, if intended, normally would have been expressed in entirely different legislative terms.

Where, as in this State, liability under the statute can be predicated only upon the proof of the presence in the product of an ingredient which is poisonous or deleterious, or of a substance which reduces or lowers the quality or strength of the product, it is difficult to understand how the unexplained presence of a piece of steel in a bakery product can be said to be within the legislative contemplation.

To illustrate, baking powder or a sweetening element might in a given case prove to be poisonous or de-leterious; it would be an "added poisonous ingredient" or a "deleterious ingredient" or a "substance" "mixed," not because it is a component part of the finished product as distinguished from a foreign substance unintentionally in-serted or added, but because in the accepted sense of the

word it is an "ingredient" or "substance" added to or "mixed" in the product. By a parity of reasoning, negligent manufacture or handling of a product which results in a state of facts such as is presented here involves the presence of an entirely foreign substance which does not come within the signification of the words "poisonous" or "deleterious to health," and presents a case no different in principle from one in which the injuries sustained arise out of negligence in permitting a product to be so wrapped and packaged that the handling of the article produces physical injuries.

The whole tenor and scope of the many provisions of the South Carolina pure food law emphasize the legislative purpose to protect the public against injuries to health resulting from either carelessness or willfulness in the manufacture of food products in the field of "ingredients." The purpose and result are not to abolish common-law rules of liability, but to introduce new fields of liability where any ingredient entering into the process of manufacture of a food product is of a character that may be described as poisonous or otherwise deleterious to health.

The citation in the majority Opinion of the case of *Irick v. Peoples Baking Co., supra,* as "a plain and pointed precedent for the present decision" is in the opinion of the writer based upon a misapprehension. The fact that the case cited dealt with an action under the common law, and not under the statute is clouded by the citation in the opinion of a text statement taken from 26 C. J., 785; 36 C. J. S., Food, § 58; wherein the author deals with the liability of the manufacturer of a food product under the pure food statute; and this cloud is accentuated by the citation after the quoted text, without comment, of a section of the South Carolina pure food statute. But when the opinion as a whole is read it is readily seen that the action was brought under the common law, and not under the statute. And this is conclusively found to be the case when resort is had to the transcript upon which the case came to this Court.

In other words, the *Irick case* would be a pertinent authority on the present issue if the exceptions were not restricted to an alleged violation of the pure food statute. But even though pertinent in that light, the case still would not be controlling of the issue before us here. As the opinion of the Court in that case discloses, a pertinent allegation of the complaint was that when the plaintiff began eating a slice of the cake produced by the defendant, her mouth, gums and lips were cut and bruised by several pieces of sharp glass that had been "baked in the cake by the defendant"; and that the injuries of which the plaintiff complained were due to the defendant's negligence in permitting "the said glass to be baked in the said cake and sold to the plaintiff * * *." And it was testified that the cake in question reached the plaintiff directly from the defendant's bakery, wrapped in cellophane.

In the record before us, no such allegations are made and no such testimony is disclosed. There is nothing in the record from which it can be reasonably inferred whether the appearance or condition of the cake, or of any wrapping in which it may have been enclosed, indicated that the piece of steel was baked in the cake purchased by the appellant here, or was inserted or otherwise found its way into the cake after the same had been produced, and whether this happened before or after the delivery of the cake to the merchant from whom the appellant purchased it.

The statement in the majority opinion that the "steel here was a substance mixed with the cake" is not supported by the record. If it had been so supported, the appellant would not be here limiting his appeal to the question of the applicability of the pure food statute. He would have had at least a *prima facie* case under the decision in the *Irick case* above referred to. As far as the record discloses, the steel could have entered the cake after the process of manufacture had been completed, and after the cake left the hands of the manufacturer.

The views above expressed find support in the case of *Bourcheix v. Willow Brook Dairy*, 268 N. Y., 1, 198 N. E., 617, 98 A. L. R., 1492.

Limiting the disposition of the case to the single question presented by appellant whether the pure food act is applicable to the present case, the ruling of the trial Judge on that point should be affirmed.

MR. ASSOCIATE JUSTICE TAYLOR concurs.