Cecil O. CASKEY and Irene L. Caskey, Plaintiffs,

v.

OLYMPIC RADIO AND TELEVISION, Defendant.

Civ. A. No. 71–258.

United States District Court, D. South Carolina, Rock Hill Division.

June 13, 1972.

D. Glenn Yarborough, Lancaster, S. C., for plaintiffs.

Edward M. Woodward and R. W. Dibble, of Edens, Woodward & Butler, Columbia, S. C., for defendant.

HEMPHILL, District Judge.

This action, originally instituted in the Court of Common Pleas for Lancaster County, South Carolina, on August 26, 1970, by the late Cecil O. Caskey and Irene L. Caskey, seeks damages of the defendant for alleged breach(es) of express and implied warranties, in the amount of $40,000.00. Admittedly the plaintiff and the late deceased plaintiff (hereinafter called plaintiffs) are citizens and residents of Lancaster County,

South Carolina, and the defendant is a foreign corporation with principal office and place of business in New York State. By virtue of the diversity of citizenship, and the amount claimed, and in reliance thereon, on March 15, 1971, the defendant petitioned for, and obtained removal of the case to the United States District Court, for the District of South Carolina, Rock Hill Division.[1] If the case had been processed in the Court of Common Pleas for Lancaster County, South Carolina, it would have been placed by the Clerk of that Court on what is known as Calendar One.[2] After its removal to this court, it was placed on the jury calendar of the Rock Hill Division, but thereafter, through counsel, the parties agreed that the matter would be heard by the court without a jury. The original plaintiffs were Cecil O. Caskey and Irene L. Caskey, but before the case could be brought on to disposition in the Rock Hill Division, Mr. Caskey died and Mrs. Caskey substituted as his Administratrix and a party-plaintiff in his stead. The case was set for usual disposition at the April, 1972, term of civil nonjury court in the Rock Hill Division; when the calendar was called at the bar meeting for that court, counsel announced that they wished to submit the case to the court, on the record, and waive the presentation of live testimony. After the consent of the court had been obtained, counsel were ordered to submit supporting briefs, and/or proposed findings of fact and conclusions; this, after some delay, was accomplished. The court thereupon entered upon consideration of the case, including those matters contained in the pleadings and revealed by discovery processes, including interrogatories, and depositions of the late Mr. Cecil O. Caskey, Mrs. Irene L. Caskey, Robert E. Dabney, Hazel R. Prevette, and Judy Watson. Counsel agreed that this was the entire record which the court would be called upon to consider.

After consideration of all the statements set forth in the interrogatories, the entire record[3] as revealed by the file, and exhibits, and the depositions, upon the credible evidence deduced therefrom, this court publishes its

## FINDINGS OF FACT

1. The late Mr. Caskey and Mrs. Caskey entered holy wedlock on February 11, 1960. A "couple of years" after this marriage, the couple acquired a television set, allegedly bearing an Olympic label, from Robert E. Dabney, owner and operator of a radio and television service near Lancaster, South Carolina. The late Mr. Caskey and Dabney were good friends, and when Dabney set the price of $40.00 for the set, the two friends matched coins to see whether Mr. Caskey would pay double or nothing, and Mr. Caskey won, so he paid nothing for the set. Admittedly the set was

1. Under the provisions of Title 28, Section 1332, requisite diversity of citizenship and the amount involved, authorized removal.

2. Calendar One is a calendar of jury cases, and usually contain those actions at law where factual issues are to be decided by a jury under South Carolina practice.

3. It has been stipulated between the attorneys for the parties, that the case is to be submitted to the court upon a deposition of Cecil O. Caskey, Irene L. Caskey, Judy Watson, Robert E. Dabney and Hazel R. Prevette, all taken on May 17, 1971, and on the following of this cause, together with defendant's interrogatories dated May 26, 1971, and plaintiffs' answers thereto dated August 28, 1971, as supplemented by the answers dated January 21, 1972. The supplementary answers were required by an Order of Judge Chapman dated January 19, 1972. Copies of the Letters of Administration between counsel which constitutes stipulation mentioned, will be transmitted with the letter submitting the brief of either or both parties. Defendant stipulates that the property damage in question amounted to $40,000.00, the amount sought by the prayer of the complaint. The depositions and interrogatories are all short, and no reference to page numbers or interrogatory numbers were used in the various briefs. The facts offer no basic dispute. [Stipulation is a part of the record.]

secondhand.[4] Dabney could not recall from whom, or how, he acquired the secondhand set, before losing it to Caskey. There is some dispute as to whether or not it had an Olympic label on it, but for the purpose of this treatment, it will be assumed that it had an Olympic label, as claimed by the plaintiffs.

2. The serial number and every other identification about the set is unknown. Such things as dimensions, color and condition at the time it was acquired by the Caskeys has not been set forth in the record, and the screen size is not available. It was generally agreed that it was a portable set, without a handle or a carrying strap. Mr. Caskey thought it had a telescope type antenna built into the set; Mrs. Caskey thought not.

3. The set was used by Mr. and Mrs. Caskey in their home. It gave satisfactory service except for a picture roll. In December 1968, repairs were made to the set by the AAA Appliance Shop in Lancaster, in an endeavor to correct the roll. It was again taken to AAA Appliance Shop sometime in the fall of 1969.[5] In 1969, it remained in the shop for several weeks, and during this time Mrs. Caskey called Mr. Prevette, the Manager, and advised that she wanted to sell it, and he agreed that this was appropriate. The trouble was what is known as "vertical roll", in which the picture would roll slowly down, lock for a time, and then start to roll again. Prevette's testimony was that the back of the set was never taken off while in the shop in December of 1969, but he later conceded that this statement was based on hearsay as he did not do the repairs. After its 1969 trip to the shop, Mrs. Caskey sent her daughter, Judy Watson, to pick up the set and bring it to the laundromat the Caskeys owned in Lancaster.

4. After Mrs. Watson brought the set to the laundromat, Mrs. Caskey set it on the top of a snack box, plugged it into a wall outlet behind a cold drink rack. She next hooked the set to an outside antenna and turned it on. The set played all day, apparently satisfactorily, until about 8:30 in the evening, when it apparently caught fire. The fire spread to the premises of the laundromat, damaging the plaintiffs' property, real and personal, in the amount of $40,000.00. This subrogation action followed for the benefit of the insurers who paid the fire loss.

5. After the fire, the remains of the television set, consisting mostly of a frame and burned out wires, was supposedly gathered up by an agent of one of the subrogation companies, and turned over to Mr. Caskey with instructions to "just put it up, lay it up, we may call for it, we may not." What finally became of the remains is unknown, and no part of the set, no remnant is available for any sort of technical inspection or examination.

6. Plaintiffs admitted in their depositions, and interrogatories, that they had no express warranty from defendant, and they could not specify or identify any defect in the set which would cause the fire. In their complaint they state or attempt to state a claim for breach of implied warranty of safeness and fitness, and in the alternative a claim based on negligence or strict liability and tort for the marketing of a defective and an inherently dangerous product without warning of the danger, seeking only property damage. Defendant by its answer, pleads, among other things, a general denial, no privity of contract, assumption of risk.

4. In his deposition of May 17, 1971, Cecil O. Caskey testified:
"Q. And when you got that set, did you get any guarantees, or pamphlets or papers long with it
A. No, sir, just an old secondhand teelvision set. That's what it was."

5. Hazel R. Prevette, whose deposition was taken, was Manager of AAA Appliances, and his testimony indicated that the set was in his shop in December 1968, and December of 1969.

## QUESTIONS INVOLVED

I. Is there any direct or circumstantial evidence in the record from which it can be reasonably inferred that there was a defect in the television set in question which existed at the time it left the hands of the defendant manufacturer for which defendant was responsible and which operated as a proximate cause of the fire and the resulting damage to plaintiffs' property?

II. In an action upon an implied warranty of safeness and fitness in connection with the sale of a product, is it necessary in this State for the plaintiff to show privity of contract between himself and defendant, where property damage only is involved?

III. Is there any evidence in the record, direct or circumstantial, from which it can be reasonably inferred that the defendant was guilty of any negligence in the manufacture or design of the set in question which operated as a proximate cause of plaintiffs' property damage?

IV. Is there any evidence in the record, direct or circumstantial, from which it can be reasonably inferred that the defendant manufactured and sold the set in question in a defective condition, unreasonably dangerous to the plaintiffs or to their property?

V. Is there any evidence in the record, direct or circumstantial, from which it can be reasonably inferred that the set in question bore no warning thereon such as plaintiffs allege it was the duty of the defendant to give?

VI. If there was an inherent danger in the television set in question as manufactured or designed by the defendant, is there any evidence in the record, direct or circumstantial, from which it can be reasonably inferred that the defendant knew, or by the exercise of reasonable care should have known, of the inherent danger?

VII. If the vertical picture roll described in the evidence was a circumstance showing a defect in the television set in question, and if it has been shown that such defect existed therein at the time it left the hands of the defendant, and that such defect was a proximate cause of the set's catching fire, did not the plaintiffs assume the risk of the harm which occurred by continuing to use it in that condition?

## CONCLUSIONS OF LAW

### QUESTIONS I, III, AND IV—IS THERE PROOF OF A DEFECT?

A. Essential to the right of recovery upon any one of the theories upon which the plaintiffs proceed is the necessity that they prove (a) that a defect existed in the television set in question,[6] (b) that the defect caused the accident and injuries or damages complained of,[7] and (c) that the defendant is responsible for the defect complained of.[8] Plaintiffs have offered no proof that the television set in question had properties which explain the accident which occurred. In other words, they have identified no substance in the product which could catch fire, considering the sources of ignition which were present.

B. Plaintiffs' case is based upon the mere happening of the accident; they admit that the evidence points to no defect in the set which caused it to catch

---

6. Generally on defect see 1 Hursh, American Law Products Liability, Section 1.3 (hereafter "Hursh") ; 2 Frumer & Friedman Products Liability 16A(4) (e) (hereafter "Frumer") ; 3 Harper & James, Law of Torts, Section 28.11, p. 1557 (1956).

7. 1 Frumer, 1 Hursh, Section 5A. See generally 1 Frumer, Section 1102, Section 16A(4) (e).

8. Restatement of Torts 2d, Section 402A, Comment g ; 1 Frumer, Section 11.01 (4) ; 1 Hursh, Section 1.14 ; Dunn v. Ralston Purina Co., 38 Tenn.App. 229, 272 S.W.2d 479 (1954) ; Sharp v. Chrysler Corp., 432 S.W.2d 131 (Tex.Civ.App. 1968).

fire. To allow them to recover upon proof of the accident alone would require the application of the doctrine of *res ipsa loquitur*, which the Supreme Court of South Carolina has consistently held is not the law of this State, and would require its application to a state of facts which would not meet the test in other states which do apply this doctrine.

C. United States District Judge (now Circuit Judge) Russell's Opinion and Order in Brown v. Ford Motor Company, 287 F.Supp. 906 (D.S.C.1968) answers favorably to the defendant all of the material questions involved in this case. There, plaintiffs based their right of action against the defendant manufacturer on the claim that the accident and their resulting injuries and damages were due to the malfunctioning of a defective steering mechanism installed negligently and in violation of defendant's warranty, express and implied.

D. Factually, it appeared that the car involved in the accident was manufactured by defendant and sold to the wife of the plaintiff-driver by one of the defendant's authorized dealers some eleven months before the accident. It was used by the plaintiff-driver and his wife as a family car. At the time of the accident, it had been driven about 16,000 miles and had had a number of tire changes. At the time of the accident complained of, the road was wet and it was raining at the time. Suddenly, the driver of the car noted that the steering wheel of the car "started to turn around" and "just kept turning continually." No noise or racket was heard at the time. The driver lost control of the car, and uncontrolled, the car moved toward the right and crashed into a bridge.

E. No immediate effort was made to inspect the steering mechanism or to ascertain whether such mechanism was defective. Effort to find the salvage was made over two years after the accident, but the automobile had been sold for junk.

F. Prior to the accident, neither the plaintiff-driver nor his wife had any complaints about the performance of the car. Neither had they experienced difficulties in its use, nor had they observed any malfunctioning of any of its parts, including those of its steering mechanism.

G. Although plaintiffs deposed three expert witnesses on whom they relied to establish a defect in the car's steering mechanism, they had never seen the car in question, nor had they made any examination of its steering mechanism. All of them disclaimed an ability to fix the probable cause of the failure of the steering mechanism or to ascribe such failure to a specific part or design of such mechanism. All three affirmed that on a car which had been driven 16,000 miles over a period of eleven months, including "wear and tear" or a severe bump could cause a failure of its steering mechanism. The essence of their testimony was that, under the facts given by the plaintiff-driver, "Something went wrong with the steering mechanism", and they named at least twenty things which could have caused the malfunctioning, but affirmed the impossibility of identifying what may have been the cause. This was the extent of the evidence available to establish a defective mechanism, a mechanism with over 100 moving parts, according to one of the plaintiffs' experts.

H. Upon the recited facts, and it being established that no genuine issue of material fact existed, Judge Russell granted summary judgment in favor of defendant, and in a well-considered opinion in which he cited and considered many of the applicable decisions of the South Carolina Supreme Court, he predicated his order upon the following established principles:

1. That a plaintiff's right of recovery in a case of this kind may not rest on the presumption arising from the mere accident itself or on any doctrine of *res ipsa loquitur*;

2. That his right of recovery must be predicated upon proof, either direct

or circumstantial, that there was a defect in the product or in its design and that it was reasonably probable that such defect was the cause of the injuries;

3. That the burden of establishing both such defect and its causal connection with the accident rests on the plaintiff; and

4. That plaintiff's proof must rise above surmise, conjecture or speculation.

Commenting further upon the facts presented, Judge Russell said, among other things:

These cases are also unusual in that the plaintiffs make no attempt to identify what caused the malfunctioning of the steering mechanism . . .

\* \* \* \* \* \*

The cause of this accident, the cause of any malfunctioning of the steering mechanism, is, as the plaintiffs concede, uncertain. There is no proof of what in the steering mechanism broke, if it did break, or why. There is no proof of a defect in the steering mechanism, in its materials or workmanship. . . . No one of them (the experts) seeks to identify any part of the steering mechanism as defective or to suggest why such mechanism failed to function. . . . The cause of the accident is, under this record, a matter of surmise, speculation and conjecture.

I. With respect to plaintiffs' several recovery theories in this case, Judge Russell in footnote one said: "Actually, the modern rule of strict liability for manufacturers has assimilated both the negligence and the warranty principle of liability and largely made useless the distinctions between actions in negligence and in warranty, express or implied. Schenfield [Schenfeld] v. Norton Company (D.A. 10th Cir. Colo.1968), 391 F.2d 420, 422–423."

J. Again, with reference to the theories upon which plaintiffs proceed, in United States Rubber Company v. Bauer, 319 F.2d 463 (8th Cir. 1963), cited with approval by Judge Russell in Brown, supra, it was held that in the absence of the proof of the existence of a defect in an article, the manufacturer may not be held liable for negligence in its manufacture, or on the theory of implied warranty.

K. The application of the opinion in Brown, supra, to the facts of this case are readily apparent when it is considered that several years prior to the accident, probably about seven years, the plaintiffs acquired the set in question in a used condition, and at that time the then owner of the set considered it to be of little to no value. No effort was made by plaintiffs to trace the history of the set prior to their acquisition of it and thereby to negative any prior improper handling or use or cause of the accident other than a defect in the set. Even in jurisdictions applying the doctrine of res ipsa loquitur to supply the inference of a defect in a product, it is held in at least some jurisdictions that where the product is in the hands of the user or consumer when the accident occurs, it is essential to the proving of a defect by circumstantial inference, as by res ipsa loquitur, that the plaintiff negative improper handling or use and that he negative causes of the accident other than the defective condition of the product. Franks v. National Dairy Products Corporation, 282 F.Supp. 528, 531 (W. D.Tex.1968).

L. As to the doctrine of res ipsa loquitur, in Vandercook & Son, Inc. v. Thorpe, 322 F.2d 638 (5th Cir. 1963), the court held that the showing of an unexplained, erratic and unpredictable malfunctioning of a power driven printing press after the press had operated normally for 4½ months following installation and maintenance by the operator's employer, did not establish liability of the press manufacturer under the principle of res ipsa loquitur.

M. The record here discloses that, notwithstanding the fact that it was an

old, used television set, when the plaintiffs came into possession of it, the set played satisfactorily for approximately seven years before the accident, except for vertical picture roll, a condition well known to the owner of any television set. While in their hands, it was repaired at least once for that condition, and probably an attempt to correct this condition again was made immediately prior to the fire. It is a significant circumstance, we submit, that the set caught fire on the very day that it was brought back to the plaintiffs' place of business from the repair shop where it had been for several weeks. While to conclude either way that such was the cause of the set's catching fire would be pure speculation, the possibility that it occurred as a result of a defective repair seems much stronger than the possibility that it was caused by some defect which had existed from the time of its manufacture—probably ten or twelve years before, or longer.

N. Since television sets are in such common use throughout this country and the world, it is common knowledge that the tubes and components of a television set burn out or wear out, including the picture tube itself; that tubes and components may be replaced by those manufactured by others; and, that a television set contains many components which from time to time wear out in normal use and require replacement. In consequence, this set during its long use and different ownerships may have been repaired or tinkered with many times before the accident, and any number of its original components may have been replaced by those manufactured by others. Any of such repairs may have been negligently done, or defects may have existed in replacement parts made by others, any one of which could be the cause of the accident.

## QUESTION II—DOES PRIVITY OF CONTRACT AVAIL PLAINTIFF?

O. It is apparent from the record that the set was manufactured and placed in commerce long prior to January 1, 1968, the effective date of the Uniform Commercial Code in this State. In consequence, its substantive provisions are not applicable to this case. Draffin v. Chrysler Motors Corporation, 252 S.C. 348, 166 S.E.2d 305 (1969).

P. The last expression of the Supreme Court of South Carolina on the necessity of privity to support an action for the breach of an implied warranty is Odom v. Ford Motor Company, 230 S.C. 320, 95 S.E.2d 601 (1956). There the court held that privity of contract is required in an action for breach of an implied warranty and that there is no such privity between a manufacturer and one who has purchased the manufactured article from a dealer or is otherwise a remote vendee.

Q. However, in the subsequent case of Springfield v. Williams Plumbing Supply Co., 249 S.C. 130, 153 S.E.2d 184, the South Carolina Supreme Court pointed out in reference to *Odom* that there are recognized exceptions to this general rule, and that its facts did not reflect that physical harm had resulted to person or property, but that the claim was for losses in farming operations due to the failure of a tractor to perform. The appeal was from an order overruling a demurrer to a complaint for personal injuries and property damage upon breach of an implied warranty of safeness and fitness in the manufacture of a water heater which exploded, the plaintiffs being remote vendees. The Court refused to pass upon the question on demurrer, saying:

In the still developing state of products liability law, we are asked by appellants to decide, only on the basis of the pleadings, questions of clearly novel impression in this jurisdiction. While their motions were based on the contention that privity is an absolute prerequisite to liability under an implied warranty, in seeking a dismissal of the complaint, they asked the lower court and are asking us to hold, in effect, that in the absence of privity of contract, or the specific allegation and

proof of negligence, the plaintiffs cannot recover against them upon the theory of implied warranty, or any other theory of law. To so hold would involve the decision, on demurrer, of important questions of novel impression, the decision of which could have far reaching effects. Under all of the circumstances and in justice to the parties, as well as future litigants, we think these questions should not be decided on demurrer.

■ R. This court does not believe that it can be predicted from the decision in *Springfield* that the South Carolina Supreme Court would do away with the necessity of privity, or adopt the doctrine of strict liability in tort, in a case so barren of probative evidence as exists in the case at bar.

## QUESTIONS V & VI—IS THERE PROOF OF AN INHERENTLY DANGEROUS PRODUCT OR PROOF PROPER WARNING WAS NOT GIVEN?

■ S. There is a clear distinction between a product which is inherently dangerous no matter how carefully it is made and one which is imminently dangerous if a defect exists therein, or if it is negligently made. (See 74 A.L.R.2d 1111, particularly pages 1147 through 1164.)

■ T. Under the authorities collected in the cited annotation, we submit that a television set is not an inherently dangerous product, but that it may be an imminently dangerous product if it is defectively or negligently made.

■ U. If a product is inherently dangerous no matter how carefully made, then the manufacturer may be under a duty to give an appropriate warning of this fact, or may protect itself from liability by the giving of an appropriation warning. (See Restatement of Torts 2d, Section 402A, Comment J.) On the other hand, if imminently dangerous because negligently or defectively made, then the court does not believe that any amount of warning would ab-

solve the manufacturer from liability in a proper case.

■ V. Moreover, where a plaintiff alleges that a product was inherently or imminently dangerous because of some defect in its manufacture, or because it was negligently made, it is incumbent upon him to prove that the defendant knew, or by the exercise of reasonable care should have known, of the inherent danger. Vandercook and Son, Inc. v. Thorpe, 322 F.2d 638, 644 (5th Cir. 1963). Here there is no such proof.

W. Finally on this point, if the set in question was inherently or imminently dangerous when marketed, the plaintiffs have failed to prove that an appropriate warning was not given by some plate attached to, or by some printing on, the set itself.

## QUESTION VII—ASSUMPTION OF RISK

■ X. It may not be amiss to state that if the vertical picture roll described in the evidence is a circumstance showing: (1) that there was some defect in the television set in question; (2) that such defect existed at the time it left the hands of the defendant; and (3) that such defect was the proximate cause of the set's catching fire, then it is readily apparent that plaintiffs assumed the risk attendant upon their continued use of the set with full knowledge of its malfunction in that particular. Greco v. Bucciconi Engineering Co., 407 F.2d 87, 92 (3rd Cir. 1969) and authorities therein cited.

In this case, plaintiffs' proof of defect and of causal relation to such defect to the fire out of which their alleged action arises amounts to mere surmise and speculation. As such, it will not, as a matter of law support an action. Defendant is entitled to judgment. The Clerk will enter an Order that in this case the plaintiffs take nothing of defendant and shall enter judgment for defendant.

And it is so ordered.