James J. McHUGH, Plaintiff,

v.

Rebecca Ann CARLTON et al.,
Defendants.

Civ. A. No. 73–1567.

United States District Court,
D. South Carolina,
Greenville Division.

Jan. 31, 1974.

Ellis B. Drew, Jr., Anderson, S. C., for James J. McHugh, the plaintiff.

David L. Freeman, of Wyche, Burgess, Freeman & Parham, Greenville, S. C., for Rebecca Ann Carlton and William Carlton.

William M. Grant, Jr., of Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for Joe Stevenson.

William B. Price, Greenville, S. C., for Walter Simister, III.

## ORDER

HEMPHILL, District Judge.

ON DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Defendant Simister, doing business as Sonny's Tire & Recapping, is a manufacturer of recapped tires. Defendant Stevenson operates a service station which performs mechanical repairs to automobiles and sells gas (when available), oil, and TBA [1] products. Defendants, William and Rebecca Ann Carlton, are the owner and operator, respectively of an automobile involved in a collision with plaintiff's vehicle on U. S. Interstate No. 75 in Cook County, Georgia, on November 28, 1971.

On November 26, 1973, plaintiff filed a complaint against all four defendants. Plaintiff, at the time of the accident, was a resident of Georgia but now is a resident of Michigan. All defendants are residents of South Carolina. Jurisdiction of the court is based on diversity of citizenship.[2]

The complaint charges negligence on the part of the Carlton defendants, breach of implied warranty of merchantability under the South Carolina Uniform Commercial Code § 10.2–314 and breach of implied warranty of fitness for a particular purpose under South Carolina Uniform Commercial Code § 10.2–315 on the part of defendants Stevenson and Simister, and negligent manufacture of the product on the part of defendant Simister.

The cause of action based on the negligence charge against the Carlton defendants arose in Georgia and therefore Georgia law should apply. The sale of the allegedly defective product occurred in South Carolina and therefore South Carolina law should apply to the charges against defendants Stevenson and Simister.

The Carlton defendants filed a cross-claim under Federal Rule of Civil Procedure 13(g) [3] against defendants Steven-

---

1. TBA is a term of art in the service station trade for "tires, batteries, and accessories".

2. 28 U.S.C. § 1332.

3. Fed.R.Civ.P. 13(g). Cross-Claim Against Co-Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may

son and Simister on the same charges contained in plaintiff's complaint.

Defendant Stevenson now moves this court to dismiss him as a party from this action by striking the complaint and cross-claim against him under Rule 12(b)(6) [4] for failure to state a claim upon which relief can be granted.

## ISSUES

1. Is a recapped tire an inherently dangerous product?

2. Is privity of contract necessary under South Carolina Uniform Commercial Code § 10.2–318 for a user in the purchaser's family to maintain an action for breach of implied warranty against a defendant retailer for damages caused by a latent defect in the product sold?

3. Is privity of contract necessary under South Carolina common law for an innocent third party to maintain an action for breach of implied warranty against a defendant retailer for damages caused by a latent defect in the product sold?

4. Is defendant tire retailer liable on an implied warranty of fitness for a particular purpose under the South Carolina Uniform Commercial Code § 10.2–315 for damages caused to the purchaser, a user in the purchaser's family, or an innocent third party, by a latent defect in the recapped tire sold?

5. Is defendant tire retailer liable on an implied warranty of merchantability under South Carolina Uniform Commercial Code § 10.2–314 for damages caused to a purchaser, a user in the purchaser's family, or an innocent third party, by a latent defect in the recapped tire sold?

6. Are defendants, retailer and tire manufacturer, strictly liable in tort for damages caused by a latent defect in the recapped tire sold?

## INHERENTLY DANGEROUS PRODUCT

Initially, it is important for a determination of the subsequent issues to decide whether a recapped tire is an inherently dangerous product. The question seems to be one of first impression in the United States.

Factors applicable in determining whether a product is imminently dangerous are set forth in Annot., 74 A.L.R.2d 1165 (1960):

> The courts are in substantial agreement that a product is imminently dangerous, . . . if, although it is not dangerous by its nature and is safe to be used for the purpose intended when properly constructed, it contains a defect which renders [it] dangerous when applied to its intended use in the usual and customary manner.

Odom v. Ford Motor Co., 230 S.C. 320, 95 S.E.2d 601 (1956), is one of many cases cited as express or clearly implied authority to this effect.

New or used automobile tires have been either found or implied to be imminently or inherently dangerous in all the following cases: McDevitt v. Standard Oil Co., 391 F.2d 364, 368–370 (5th Cir. 1968); B. F. Goodrich Co. v. Hammond, 269 F.2d 501 (10th Cir. 1959); Hacker v. Rector, 250 F.Supp. 300, 301–302 (W. D.Mo.1966); Hart v. Goodyear Tire & Rubber Co., 214 F.Supp. 817 (N.D.Ind.

be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

4. Fed.R.Civ.P. 12(b). Defenses and Objections— . . . How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . .

(6) failure to state a claim upon which relief can be granted, . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

1963); Barth v. B. F. Goodrich Tire Co., 265 Cal.App.2d 228, 71 Cal.Rptr. 306, 314–315, 319–321 (1968); Casetta v. United States Rubber Co., 260 Cal. App.2d 792, 67 Cal.Rptr. 645, 650, 660 (1968); Farr v. Armstrong Rubber Co., 288 Minn. 83, 179 N.W.2d 64, 68–70 (1970); Forry v. Gulf Oil Corp., 428 Pa. 334, 237 A.2d 593, 596–598, 601 (1968); Malinak v. Firestone Tire & Rubber Co., 436 S.W.2d 210, 214 (Tex. Civ.App.1968).

■■ A fortiori, a recapped tire, by its very nature, is inherently dangerous or imminently dangerous when it has a latent defect. The court takes judicial notice that a "recapped" tire is simply an old bald tire which has a new strip of tread wrapped around it and fastened to the old tire by heat treatment. Hence, the bald tire is "recapped". The tire is thereafter coated so as to look like new. Such tires have weak sidewalls because of their prior life and a tendency for the new tread to unwrap if not properly fastened to the old tire body.

One only has to drive along any major highway to see long strips of rubber tread that have blown off a recapped tire of a tractor-trailer. Tractor-trailers use such tires in double sets. Thus, when a tire blows the remaining tire in the double set will carry the weight load until the driver pulls his rig off the highway to change tires. A passenger vehicle does not have double sets of tires and therefore does not have this safety feature.

## PRIVITY OF CONTRACT WITH USER IN PURCHASER'S FAMILY

■ As to plaintiff purchaser injured by the allegedly defective product, there is privity of contract with defendant retailer. However, the defense of lack of privity of contract is asserted by defendant retailer against the cross-claim of defendant, Rebecca Ann Carlton, the operator of the automobile and, hence, the user of the allegedly defective tire at the time of the accident.

As to this defense, 2A Code of Laws of South Carolina, § 10.2–318 (1966), provides:

Third party beneficiaries of warranties express or implied.—A seller's warranty whether express or implied extends to any natural person who may be expected to use, consume or be affected by the goods and whose person or property is damaged by breach of the warranty. A seller may not exclude or limit the operation of this section.

Comment 2, thereto, states:

The purpose of this section is to give the buyer's family, household and guests the benefit of the same warranty [implied in this case] which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to "privity." . . . Implicit in the section is that any beneficiary of a warranty may bring a direct action for breach of warranty against the seller whose warranty extends to him.

It is clear from this comment that it is the intent of the South Carolina legislature to abolish the necessity that privity of contract exist between a seller and a user in the purchaser's family before the injured user can bring an action for breach of implied warranty against the seller.

## PRIVITY OF CONTRACT WITH INNOCENT THIRD PARTY

■ The defense of lack of privity of contract is asserted by defendant retailer against the claim of plaintiff, an innocent third party injured in the accident caused by the allegedly defective tire. Comment 3 to § 10.2–318 states:

This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given

to his buyer who resells, extend to other persons in the distributive chain.

For an answer to the defense in question, the court must look to the common law of South Carolina as expressed by the state supreme court.

Products liability cases dealing with the issue of privity of contract in South Carolina appear to be divided into two lines. One line of cases deals with the question of privity of contract when the product is one which is inherently or imminently dangerous. Where a product of that nature is involved, the South Carolina Supreme Court has understandably refused to require privity of contract of all those who are foreseeably endangered by its use. The South Carolina Reporter's Comments to § 10.2–318 are helpful here.

> This section touches on a single aspect of the very controversial problem of products liability based on breach of warranty—the common law requirement of privity of contract. The recent judicial tendency in other jurisdictions has been to narrow the scope of the lack of privity defense or to eliminate it on the ground of public policy, especially where the article sold is foodstuffs, beverages or drugs or is inherently dangerous to human safety. (For a collection of the cases see 75 A.L.R.2d 39.) The South Carolina court has repeatedly held that there is no implied warranty running with chattel, with the result that a buyer is precluded from recovery against a remote vendor in the chain of distribution. E. g., Mauldin v. Milford, 127 S.C. 508, 121 S.E. [547] (1924); Odom v. Ford Motor Co., 230 S.C. 320, 95 S.E.2d 601 (1957). . . .

> Following the leading case of McPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), the South Carolina court has relaxed the privity requirement in tort actions against remote vendors who negligently manufacture inherently dangerous articles

which cause injury. See e. g., Beasley v. Ford Motor Co., 237 S.C. 506, 117 S.E.2d 863 (1961). . . .

The issue as to whether an innocent third party, injured as a result of an inherently dangerous product, is allowed to recover damages against the retailer and the manufacturer, with whom there is no privity of contract, appears to be one of first impression in South Carolina. Considering the trend of the common law as expressed by the state supreme court, this court finds that South Carolina would dispense with the requirement of privity in such a situation and permit the injured plaintiff to pursue his remedy.

If plaintiff was a guest in the car owned by the purchaser of the allegedly defective tire, he would be allowed to pursue his remedy. The fact that plaintiff was in the car struck as a result of the blowout or the fact that plaintiff might have been standing on the sidewalk should not make a difference. To deny one the right to pursue his or her remedy because of a distinction based on one's fortuitious location at the time of an accident would not be just in law or logic.

## IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

■ Plaintiff's claim and the Carlton defendants' cross-claim contend that defendant tire retailer is liable on an implied warranty of fitness for a particular purpose for damages caused by a latent defect in the recapped tire sold. South Carolina Uniform Commercial Code § 10.2–315 provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section (§ 10.2–316) an implied warranty that the goods shall be fit for such purpose.

Comment 2 thereto is directly relevant to the issue here. It states:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Defendant purchaser bought the recapped tires, like the shoes in Official Comment 2 above, for the purpose of driving upon ordinary highways. This is the general use for tires and the ordinary purpose for which they are envisaged. Defendant purchaser did not buy the recapped tires, like the mountain climbing shoes in the example, for rough backroad mountainous driving, drag racing, sand duning, etc. Any of these purposes would be a specific use by the buyer which is peculiar to the nature of a particular requirement.

The ordinary purpose for which these goods were purchased are those envisaged in the concept of merchantability, and not in the concept of fitness for a particular purpose. Thus, defendant retailer's motion to dismiss plaintiff's claim and defendant purchaser's cross-claim for breach of implied warranty of fitness for a particular purpose must be granted for failure to state a claim upon which relief can be granted.

## IMPLIED WARRANTY OF MERCHANTABILITY

■■ South Carolina Uniform Commercial Code § 10.2–314 provides:

Implied warranty: Merchantability; . . . (1) Unless excluded or modified (§ 10.2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require.

Plaintiff contends that the recapped tire sold to defendant purchaser was unfit for the ordinary purposes for which such goods are used within the meaning of § 10.2–314(2)(c) and, as a consequence, defendant retailer breached the warranty that the goods shall be merchantable that is implied in the contract for their sale. Defendant retailer counters that no implied warranty of merchantability attached to this sale because he, as the seller, is not a merchant with respect to goods of that kind. Before dealing with this contention, some additional facts must be set forth.

Defendant retailer does not maintain a stock of recapped tires at his service station. If a customer specifically requests recapped tires, defendant retailer purchases them as a courtesy for that customer from defendant manufacturer and mounts them on the customer's automobile. Defendant retailer is in no way involved in the manufacture of recapped tires.

Defendant purchaser specifically requested that defendant retailer acquire recapped tires for him and mount them on his automobile. Acting upon his request, defendant retailer purchased recapped tires from defendant manufac-

turer and mounted them on the Carlton automobile.

Based on the foregoing additional facts, defendant retailer professes not to be a merchant with respect to goods of that kind, i. e., recapped tires. To the contrary, this statement of facts, from defendant retailer's own affidavit, conclusively shows that he is a merchant with respect to goods of that kind.

The court's finding is buoyed by Comment 3 to § 10.2–314, to wit:

A specific designation of goods by the buyer does not exclude the seller's obligation that they be fit for the general purposes appropriate to such goods. A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description. A person making an isolated sale of goods is not a "merchant" within the meaning of the full scope of this section and, thus, no warranty of merchantability would apply. . . .

The specific designation of recapped tires by the defendant purchaser did not exclude the defendant retailer's obligation that they be fit for the general purposes appropriate to such goods.

Defendant retailer's contention that he is a person making an isolated sale of goods and, thus, not "a merchant with respect to goods of that kind" cannot stand. Defendant retailer dealt in TBA products. He kept a stock of new and used, but not recapped, tires. He would procure recaps only upon specific request and make a profit in the ordinary course of his business. He now seeks to avoid liability for the allegedly defective product. Defendant retailer cannot have it both ways—make a profit from the sale of recaps but deny liability if they are defective.

This purchase was not an isolated sale within the meaning of this section. An isolated sale is one which occurs only once or at least very infrequently within the ordinary course of business. One example would be if a purchaser requested a service station operator to procure farm tractor tires or heavy earth moving equipment tires. Such large oversized tires are not the type of tires of which a service station operator is a merchant. Recapped tires for ordinary use on automobiles are goods of which most service station operators, including defendant retailer herein, are merchants within the meaning of this section.

The fact that defendant retailer sells recapped tires only upon specific request indicates his hesitancy in dealing with such an inherently dangerous product. Once choosing to sell recaps for profit within the ordinary course of business, albeit only upon request, defendant retailer must face the consequences of any liability that may result if such goods are not fit for the ordinary purposes for which they are used.[5] Of course, defendant retailer may cross-claim against defendant manufacturer for breach of his implied warranty of merchantability to the defendant retailer.

Thus, defendant retailer is a merchant with respect to goods of the kind sold in the contract and therefore gave an implied warranty of merchantability. Comment 13 to § 10.2–314 becomes relevant here. It states:

In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained. In such an action an affirmative showing by the seller that the loss resulted from some action or event following his own delivery of the goods can operate as a defense. Equally, evidence indicating that the seller exercised care in the manufacture, processing or selec-

---

5. The only alternative for a tire retailer in such a situation may be to refuse to sell recaps under all circumstances. The lost prof-it may be worth the avoidance of any liability.

tion of the goods is relevant to the issue of whether the warranty was in fact broken. Action by the buyer following an examination of the goods which ought to have indicated the defect complained of can be shown as matter bearing on whether the breach itself was the cause of the injury.

Since all of the matters mentioned in Comment 13 are, or may be, raised in this lawsuit, and, are questions of fact for a jury, the motion to dismiss plaintiff's claim and defendant purchaser's cross-claim for breach of implied warranty of merchantability must be denied because a claim upon which relief can be granted is stated.

## STRICT LIABILITY IN TORT

 Plaintiff's claim and Carlton defendants' cross-claim allege that defendants, retailer and tire manufacturer, are strictly liable in tort for damages caused by a latent defect in the recapped tire sold. These claims require this court to determine whether the statutory law of South Carolina, as expressed by the state legislature, or the common law of South Carolina, as expressed by the state supreme court, recognize the legal theory of strict liability in tort as a claim upon which relief can be granted.

This court considers the best definition of the legal theory of strict liability in tort to appear in Restatement of Torts 2d, § 402A:

Special Liability of Seller of Product
for Physical Harm to User
or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substan-

tial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Plaintiff and Carlton defendants urge that this doctrine *would be* adopted by the Supreme Court of South Carolina and therefore this court should apply a rule of strict liability in this case. Defendants, retailer and tire manufacturer, contend that such is not the law of South Carolina and therefore this court should dismiss these claims based on the theory of strict liability because relief cannot be granted on such grounds.

The legislature of South Carolina has enacted two statutes, the Hazardous Substances Act[6] and the Pure Food, Drug and Cosmetic Act,[7] both of which appear to this court to impose strict liability on a seller of any of the regulated products for injury to consumers or users.

Earlier versions of the Pure Food, Drug and Cosmetic Act were interpreted as imposing strict liability by the South Carolina Supreme Court. See Culbertson v. Coca-Cola Bottling Co., 157 S.C. 352, 154 S.E. 424 (1930); Hollis v. Armour & Co., 190 S.C. 170, 2 S.E.2d 681 (1939); McKenzie v. Peoples Baking Co., 205 S.C. 149, 31 S.E.2d 154 (1944).

The Hazardous Substances Act extended strict liability coverage to sellers of "hazardous substances" defined by Code of Laws of South Carolina, § 32–1812(e)1(a) as:

Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable, or (vi) generates pressure through de-

6. Code of Laws of South Carolina, § 32–1811 through 32–1822 (1971).

7. Id., § 32–1451 through 32–1581 (as amended 1971).

composition, heat, or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use including reasonably foreseeable ingestion by children.

There is no doubt that the recapped tires sold by defendant retailer and manufactured by defendant Simister are not foods, drugs, cosmetics, or hazardous *substances* as defined above. Instead, the claim and cross-claim allege that such devices are hazardous *instrumentalities* and that defendants, retailer and tire manufacturer, are subject to strict liability as sellers of such products in keeping with the trend of the law as pronounced by the legislature and the courts of South Carolina. In support of this position, plaintiff invites the court's attention to Springfield v. Williams Plumbing Supply Co., 249 S.C. 130, 153 S.E.2d 184 (1967).

In *Springfield*, decided four years before the two statutes referred to were enacted, the South Carolina Supreme Court refused to pass on the question as to whether or not § 402A should be adopted as a rule governing hazardous instrumentalities, a hot water heater, in the case before that tribunal. The court determined that the question was not yet ripe for decision but reflected that § 402A was the trend of modern authority in product liability cases.

Thereafter, this court was called upon in a diversity of citizenship case, Caskey v. Olympic Radio & Television, 343 F. Supp. 969 (D.S.C.1972), to determine[8]

whether a strict liability rule was in effect in South Carolina and, in so doing said:

This court does not believe that it can be predicted from the decision in *Springfield* that the South Carolina Supreme Court would . . . adopt the doctrine of strict liability in tort . . . . . Id., at 977.

Although the South Carolina legislature has passed two statutes favoring the doctrine of strict liability in tort as to some products in the interim period since the *Springfield* case, this court is reluctant to pontificate that the state supreme court would extend such a doctrine to other products, including the type involved in the present suit. Although this court admits that the trend of the law is in favor of adopting the doctrine of strict liability, as expressed in § 402A, this court will adhere to its decision in the *Caskey* case that such a rule is not yet the law of South Carolina. In the interest of comity between the federal and state courts, this court will not attempt to usurp South Carolina's hereditary right to promulgate its own common law, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), nor preempt the propagation of the doctrine by South Carolina at this time. Until the South Carolina Supreme Court speaks affirmatively on the subject of strict liability, this court will continue to follow its decision in the Caskey case that such a rule is not applicable in a diversity of citizenship case in which South Carolina tort law governs.[9]

8. This court was also asked to determine whether the doctrine of res ipsa loquitur (the thing speaks for itself) was the law of South Carolina and decided, from an analysis of state supreme court decisions, that such a rule had clearly and consistently been held not to be applicable in South Carolina. Id., at 973–976. This theory has not been posited by plaintiff or Carlton defendants in this case. Neither, in Caskey, nor here, has there been any effort to substitute a liberal circumstantial evidence doctrine for the "banished" doctrine of res ipsa loquitur.

9. The question of whether South Carolina *will, eventually,* adopt the doctrine of strict liability as the law of the State has given this court grave concern. Convinced that South Carolina has not done so, and having no desire to preempt South Carolina on the issue, this court has, nevertheless, discussed the question with various members of South Carolina's trial bench, in particular the scholarly judge of the Second South Carolina Circuit who favors strict liability and whose research has been made available to this court. This court is inclined to agree with

From the above discussion, it necessarily follows that a tort claim based upon a theory of strict liability is not a claim upon which relief can presently be granted in a diversity of citizenship case in which South Carolina law applies.

## CONCLUSIONS

1. A recapped tire is an inherently dangerous product.

2. Privity of contract is not necessary under South Carolina Uniform Commercial Code § 10.2–318 for a user in the purchaser's family to maintain an action for breach of implied warranty against a defendant retailer for damages caused by a latent defect in the product sold.

3. Privity of contract is not necessary under South Carolina common law for an innocent third party to maintain an action for breach of implied warranty against a defendant retailer for damages caused by a latent defect in the inherently dangerous product sold.

4. Defendant tire retailer is not liable on an implied warranty of fitness for a particular purpose under South Carolina Uniform Commercial Code § 10.2–315 for damages caused to the purchaser, a user in the purchaser's family, or an innocent third party, by a latent defect in the recapped tire sold because the goods were purchased for the ordinary purpose for which such goods are used and not for a particular purpose which is peculiar to the defendant purchaser's requirements.

5. There are genuine issues of fact as to whether defendant tire retailer may be liable on an implied warranty of merchantability under South Carolina Uniform Commercial Code § 10.2–314 for damages caused to a purchaser, a user in the purchaser's family, or an innocent third party, by a latent defect in the recapped tire sold.

6. Defendants, retailer and tire manufacturer, are not strictly liable in tort for damages caused by a latent defect in the recapped tire sold because the doctrine of strict liability in tort is neither a part of the statutory law of South Carolina, as expressed by the state legislature, nor a part of the common law of South Carolina, as expressed by the state supreme court.

Wherefore it is ordered, adjudged, and decreed that defendant retailer's motion to dismiss plaintiff's claim and the Carlton defendants' cross-claim for failure to state a claim upon which relief can be granted,

(a) as to breach of the implied warranty of fitness for a particular purpose under South Carolina Uniform Commercial Code § 10.2–315, is granted,

(b) as to breach of the implied warranty of merchantability under South Carolina Uniform Commercial Code § 10.2–314, is denied,

(c) as to the doctrine of strict liability in tort, is granted.

And it is so ordered.

his conclusions that strict liability is the fairest doctrine, but until the Supreme Court of South Carolina so proclaims, under the Erie doctrine (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938), this court must ac-

cept South Carolina's failure to adopt strict liability as governing this court's decisions on the issue of the doctrine's application to South Carolina cases whether in state or federal court.